WEIMER, Justice.
|,We granted the writ application in this case to address the extent of the limitation of liability afforded to a member of a limited liability company (LLC). This matter evaluates the correctness of the lower courts’ rulings, which found the sole member of an LLC personally liable for defects in a home that was constructed pursuant to a contract between the LLC and a landowner. After reviewing the record and the controlling legal principles, we reverse the lower courts’ judgment of personal liability and render judgment in favor of the LLC member, dismissing the landowner’s claims against him.[1]
FACTUAL AND PROCEDURAL BACKGROUND
In 2007, Mary P. Ogea signed a contract captioned “Custom Home Building Agreement” for Merritt Construction, LLC, to build a home on an undeveloped parcel of land she owned. On behalf of the LLC, its sole member, Travis Merritt, signed the contract. The contract did not specifically describe the type of foundation to be 12provided for the home. However, either the stock plans referenced in the contract specified, or the parties otherwise mutually understood, that the home was to be built on a slab-on-grade foundation.
After executing the contract, Ms. Ogea asked Mr. Merritt if she could have a friend prepare the site for the foundation. Mr. Merritt replied that there would be no warranty if Ms. Ogea’s friend prepared the site, so Ms. Ogea abandoned that idea. Mr. Merritt himself operated the bulldozer to prepare the dirt “pad” upon which the slab would be poured; a subcontractor then poured the concrete slab foundation. Mr. Merritt’s operation of the bulldozer would later become a focal point of this case.
After the construction work had advanced well past the point of building the foundation and framing the home, Ms. Ogea hired another concrete contractor to pour a driveway and patio. This concrete contractor informed Ms. Ogea that he believed there were problems with the concrete work for the home’s foundation. Ms. Ogea then hired a licensed engineer, Charles Norman, to inspect the structure. Mr. Norman conducted several inspections and concluded there were indeed significant problems with the slab foundation. Mr. Norman observed deviations from acceptable flatness standards, excessive and deep cracks, and a chain wall of inadequate thickness. Mr. Norman also found the slab in the kitchen area to be unlevel.
Ms. Ogea notified the LLC of the problems with the foundation. Based on her consultations with Mr. Norman, who believed the problems with the foundation *893 were beyond eeonomically-feasible repairs, Ms. Ogea requested a refund of all monies she paid to the LLC (approximately $94,000) and sought demolition of the unfinished home. The LLC did not reply to the refund request. Ms. Ogea did not make the final installment payment called for in the contract, and the LLC ceased all work on the home.
| sIn April 2008, Ms. Ogea filed suit against the LLC and against Mr. Merritt individually. Ms. Ogea sought to recover the money she had expended for the home, plus other damages under the New Home Warranty Act (La. R.S. 9:3141-3150), as well as under various theories relating to construction defects. Mr. Merritt, individually, filed a peremptory exception of no cause of action, which the district court denied. The LLC filed an answer denying liability and asserted a reconventional demand in the amount of $8,805 for unpaid work on the home.[2] The matter proceeded to a bench trial. Counsel for the LLC and Mr. Merritt withdrew, and Mr. Merritt appeared pro se at the trial.
Following trial, the district court rendered judgment against both Mr. Merritt, personally, and the LLC “in solido ” for various items of damages totaling $247,117.11. The district court found that Mr. Merritt personally performed some of the foundation work and failed to properly supervise the subcontractor who actually poured the concrete, providing grounds for Mr. Merritt’s personal liability. The district court explained:
Under a number of theories of responsibility, Louisiana Civil Code Article 2762 is the liability of a contractor for damages due to badness of workmanship; Louisiana Civil Code Article 2769, contractor’s liability for non-compliance with contract; redhibition under Civil Code Article 2520; and further the New Home Warranty Act under Title 9:3141 through:3150 et seq., are inclusive It is noted under looking at the requirements of the New Home Warranty Act, definition of builder would fall under both the definition or the position that Mr. Travis Merritt was in personally, as well as the corporation [sic], or . LLC.... Under one or more of the theories I do find that the damages were caused by either Travis Merritt and/or Merritt Construction, LLC.... It is noted that early on in the construction Ms. Ogea asked to have another individual actually do the dirt work and build the pad. Her testimony being uncontra-dicted was that Mr. Merritt said there would be no warranty if he did not do the actual work. Thereafter he [evidently took] control of the heavy equipment, provided the pad, doing that work Lpersonally, based on his own testimony.... Today in court during the presentation of the defendant’s case in chief is the first time that there was a mention of insurance, after some four-and-a-half years post-contract....
In looking at the totality of those actions I would find that Mr. Travis Merritt would be personally responsible for any actions, in addition to Merritt Construction. I do find ... that the home would be deemed a total loss, and would so find at this time, and that that total loss was, in fact, caused by the action of Travis Merritt, both individually and as Merritt Construction, LLC, in the handling or pouring of the slab....
[T]he handling of the pouring of the slab ... is what the main defect is arising. It was the job of Merritt Construction, *894 whether it was poured by them or not, to oversee and make sure that it was done within the standards that would be expected under the law.
The district court also found Mr. Merritt had perpetrated a fraud, citing the fact Mr. Merritt did not provide proof of insurance to Ms. Ogea’s counsel until trial. The court apparently believed litigation might have been avoided if Mr. Merritt had provided proof of insurance earlier, and the court noted that Mr. Merritt might not be able to discharge his personal liability in bankruptcy with a judgment against him based on fraud.
Both Mr. Merritt and the LLC appealed. The court of appeal reduced the amount of the general damage award from $221,262.11 to $128,302.71, but affirmed the imposition of personal liability on Mr. Merritt. Ogea v. Merritt, 12-1028, pp. 16 & 19 (La.App. 3 Cir. 2/6/13), 109 So.3d 516, 527 & 528. Focusing on La. R.S. 12:1320, the court of appeal ruled: “In our view, the legislature limits the personal liability of an LLC member for the debts, obligations, or liabilities of the LLC unless the debt, obligation, or liability at issue is the result of the member’s own personal actions. ...” Id., 12-1028 at 7, 109 So.3d at 522. Thereafter, Mr. Merritt and the LLC together sought a writ from this court; the crux of their application being that the LLC alone, and not Mr. Merritt personally, should be liable. As indicated, the writ |5was granted to address the extent of the limitation of liability afforded to a member of an LLC under the law and to determine the correctness of the rulings of the lower courts. Ogea v. Merritt, 13-1085 (La.8/30/13), 120 So.3d 251.
DISCUSSION
Our survey of the governing law first accounts for the distinct classifications, under the law, of an LLC and its member(s) (Section I). We then observe the existence of statutory exceptions to the shield of limited liability afforded to such members) (Section II). As a matter of first impression, we are called upon to interpret the meaning of statutorily-described exceptions to limited liability for fraud and for the breach of a professional duty, and we examine whether the exceptions apply to the trial record (Section III). As another matter of first impression, we are called upon to interpret the meaning of statutory exceptions to the shield of limited liability, exceptions applicable to a member’s “negligent or wrongful acts.” Our interpretation involves consideration of four factors, which we identify and then apply to the facts of.record (Section IV). Finally, we summarize our analysis in a concluding section (Section V).
I. The Legal Relationship of an LLC and Its Member(s)
Recalling that the instant lawsuit was brought against both Mr. Merritt and the LLC, our survey of the governing law begins with the following distinction drawn in La. C.C. art. 24:
There are two kinds of persons: natural persons and juridical persons.
A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.
IfiAn LLC, such as the LLC in this lawsuit, is an entity to which the law attributes personality and is, therefore, a juridical person. See La. R.S. 12:1301 (‘“Limited liability company’ or ‘domestic limited liability company means an entity that is an unincorporated association having one or more members that is organized and existing under this Chapter.”). Therefore, as a general proposition, the *895 law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons. See La. C.C. art. 24.
However, in narrowly defined circumstances, when individual member(s) of a juridical entity such as an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable. When individual member(s) are held liable under such circumstances, it is said that the court is “piercing the corporate veil.”[3] See, e.g., Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 11-2254, p. 6 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, 598.[4]
Piercing the corporate veil is largely a jurisprudential doctrine. See Riggins v. Dixie Shoring Co., Inc., 590 So.2d 1164, 1167 (La.1991) (collecting and |7discussing cases of veil piercing as to corporations). Furthermore, it is a doctrine that has neither been relied upon by the lower courts in the instant case, nor invoked by the plaintiff.[5] Therefore, in our survey of the law, to find the controlling principles, we turn to statutory authority. See La. C.C. arts. 1 and 3 (“The sources of law are legislation and custom.”; “Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. Custom may not abrogate legislation.”).
II. Statutory Exceptions to a Member’s Limited Liability
Although we ultimately disagree with its statutory interpretation, we agree with the court of appeal inasmuch as we also find the instant case turns upon a provision from Title 12 (Corporations and Associations) of the . Revised Statutes. Specifically, and as a matter of first impression for this court, we are called upon in this case to interpret, and then apply,[6] La. R.S. 12:1320 (entitled “Liability to third parties of members and managers”), which provides:
A. .The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.
B. Except as otherwise specifically set forth in this Chapter, no member, *896 manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited | pliability company, except when the object is to enforce such a person’s rights against or liability to the limited liability company.
D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.
Within our civil law system, the starting point in the interpretation of any statute is the language of the statute itself. Moreno v. Entergy Corp., 12-0097, p. 12 (La.12/4/12), 105 So.3d 40, 48. Words and phrases shall be read in context and shall be construed according to the common and approved usage of the language. La. R.S. 1:3. The meaning and intent of a law is determined by considering the law in its entirety and by placing a construction on the law that is consistent with the express terms of the law and with the obvious intent of the legislature in enacting the law. Moreno, 12-0097 at 12, 105 So.3d at 48.
Viewing La. R.S. 12:1320 in its entirety, we observe several portions of the statute frame its application. First, in subsection (A), we observe that the liability of a member of an LLC is to be “determined solely and •• exclusively” under this statute and under any other provision of the Chapter of the Revised Statutes dealing with Louisiana’s LLC law. Then, in subsection (B), we observe a general rule: “no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.” We readily discern this quoted language as a general rule, because its main proposition is prefaced with the phrase: “Except as otherwise specifically set forth in this Chapter.” See In re Clegg, 10-0323, p. 23 (La.7/6/10), 41 So.3d 1141, 1155 (discerning the existence of a general rule when a 1 sproposition is stated, but that proposition is made subject to a specifically-described exception); see also 9 Susan Kalinka, Louisiana Civil Law Treatise: Limited Liability Companies and PARTNERSHIPS, A Guide to Business and Tax Planning § 1.31 (3rd ed.2013) (noting that La. R.S. 12:1320(B) expresses a “general rule limiting the liability of a member of a LLC.”). Although we are called upon to analyze certain exceptions to a general rule, we observe La. R.S. 12:1320 describes limited liability as a general rule for members of an LLC, but nowhere does that statute purport to completely shield a member of an LLC from personal liability. See La. R.S. 12:1320(B).
The framework of La. R.S. 12:1320 continues in subsection (C), which identifies the proper party defendant(s) to a suit against an LLC. Although counsel for Mr. Merritt attempted to invoke subsection (C) by arguing in a motion for new trial that he was not a proper party, the district court found that this argument had been waived. That aspect of the district court’s ruling has not been challenged in this court; therefore, we express no opinion on it.[7] Instead, we continue to discern *897 the framework provided by La. R.S. 12:1320.
In subsection (D), which is the final portion of La. R.S. 12:1320, we find some enumerated exceptions to the general rule of limited liability established in subsection (B). Although subsection (B) indicates that exceptions to the general rule of limited liability may be found anywhere in Title 12, Chapter 22 of the Revised Statutes, the court of appeal’s ruling and the parties’ arguments focus on the exceptions 1 ^specifically enumerated in La. R.S. 12:1320(D). Specifically, the parties’ dispute concerns the following enumerated exceptions to the general rule of limited liability: fraud, breach of professional duty, or other negligent or wrongful act. See La. R.S. 12:1320(D).
We noted earlier that under La. R.S. 12:1320, a member’s protection against personal liability is not unlimited. We further note that the statute is cast in terms of affording a cause of action to “any person [who] may by law have against a member.” See La. R.S. 12:1320(D) (emphasis added). However, for purposes of the instant case, the cause of action afforded “by law” is restricted to these specifically enumerated areas of the law, which Ms. Ogea urges can subject Mr. Merritt to personal liability: any fraud, any breach of professional duty, or other negligent or wrongful act. See La. R.S. 12:1320(D).
Thus, a determination of the meaning of the exceptions embodied in La. R.S. 12:1320(D) has two components. As a first component, we must determine whether Ms. Ogea is a person who “by law” has a cause of action against Mr. Merritt individually. See La. R.S. 12:1320(D). Understood in its ordinary sense, the phrase “by law” indicates that we may look outside La. R.S. 12:1320 for the origin of a cause of action and for the corresponding burden of proof. See La. R.S. 1:3. However, as a second and integral component, Ms. Ogea can recover against Mr. Merritt personally only if her cause of action arises from “any fraud practiced upon [her]” or “any breach of professional duty or other negligent or wrongful act.” See La. R.S. 12:1320(D). In sum, and as will be seen in the more detailed factors necessary to apply each exception to the record before us, the exceptions to limited liability within La. R.S. 12:1320(D) are confined to certain circumscribed subjects of the law, such |nas fraud, but the definitions for those subjects are not contained within that statute itself.
III. Interpretation and Application of the Exceptions to Limited Liability for Fraud and Breach of Professional Duty
With our interpretive inquiry framed, by a general rule of limited liability, a rule which is made subject to exceptions, we turn to the first exception to limited liability at issue in this case, i e., fraud. As noted, fraud is not defined in La. R.S. 12:1320(D); therefore, we must turn elsewhere for a definition. Louisiana’s most longstanding legislative compilation, the Civil Code, provides the following definition: “Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain *898 an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.” La. C.C. art.1953. This definition of fraud has remained essentially unchanged from that contained in Article 1847(6) of the Civil Code of 1870. See La. C.C. art.1953, Revision Comment-1984, comment (a). It is appropriate to draw from such a longstanding definition because, when the legislature enumerated the term “fraud” but did not define “fraud” in La. R.S. 12:1320, “this Court must assume the Legislature was aware of existing laws on the same subject.” See Foti v. Holliday, 09-0093, p. 6 (La.10/30/09), 27 So.3d 813, 817.
' The district court found Mr. Merritt had perpetrated a fraud, citing the fact he did not provide proof of insurance to Ms. Ogea’s counsel until trial. However, her counsel did not introduce an insurance policy into evidence. In our review of the record, therefore, there is nothing to show that insurance coverage would have been provided for defects in workmanship. See also 15 William S. MoKenzie & H. Alston Johnson III, Louisiana Civil Law TREatise: INSURANCE Law and | ^PractiCe § 6:21 at 574 (4th ed.2012) (explaining that work and product exclusions “reflect the intent of the insurance industry to avoid the possibility that coverage under the CGL [Commercial General Liability] policy will be used to repair and replace the insured’s defective products and faulty workmanship. The CGL policy is not intended as a guarantee of the quality of the insured’s products or work.”).
In short, there is nothing in the record to support the conclusion that Mr. Merritt’s failure to provide proof of insurance to counsel until the day of trial resulted in “an unjust advantage” for Mr. Merritt or “a loss or inconvenience” to Ms. Ogea. See La. C.C. art.1953. With no record evidence of fraud, there is nothing to trigger the fraud exception under La. R.S. 12:1320(D), by which Mr. Merritt could be held personally hable notwithstanding that he was a member of the LLC.
We turn, therefore, to the next exception to limited liability under La. R.S. 12:1320(D) at issue in this case. Specifically, recovery can be had from an individual member for “any breach of professional duty.”' See La. R.S. 12:1320(D). Just as with the fraud exception, La. R.S. 12:1320 does not define the quoted phrase. Therefore, we are directed to search for a definition outside the statute itself.
Again, in searching for the intended meaning of “any breach of professional duty” in La. R.S. 12:1320(D), we recall that “this Court must assume the Legislature was aware of existing laws on the same subject.” Holliday, 09-0093 at 6, 27 So.3d at 817. Recognizing that the word “professional” is the focus of the quoted exception, the following principle must be observed as well: “Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.” La. R.S. 1:3.
11sWhen the LLC statutes were enacted, “professional” had a clearly defined technical meaning within the law of business entities. See James S. Holliday, Jr., & H. Bruce Shreves, Louisiana Practice Series: Louisiana Construction Law § 1:9 pp. 10-11 (2013) (“Since 1964, professional law corporations have been possible in Louisiana. In 1968, with recodification of Louisiana’s corporate laws, professional medical corporations were also permitted. Since then, Louisiana has enacted statutory provisions for professional corporations for the dental, accounting, chiropractic, nursing, architectural, optometry, psychology, veterinary medicine and architectural-en *899 gineering professions.” (Footnotes omitted.))
Turning to the record before us, we find Ms. Ogea introduced no evidence that Mr. Merritt was a member of one of these legislatively-recognized professions. Instead, Ms. Ogea suggests that Mr. Merritt’s role as a contractor should be found to equate to a professional role and that his derogation from acceptable standards for contractors likewise should be found to equate to a “breach of professional duty” under La. R.S. 12:1320(D). However, Ms. Ogea again failed to offer proof at trial to justify her argument. From all that appears, it was the LLC that held a contractor’s license, not Mr. Merritt individually.
In the record, we find the contract between the LLC and Ms. Ogea purports to describe the contractor’s licensing status. On the face of the contract, it is not Mr. Merritt, but the LLC, which is described as holding a contractor’s license. While this contract is not necessarily dispositive proof of licensure, Ms. Ogea introduced no competent evidence to show otherwise. Given the lack of proof that Mr. Merritt was individually licensed, and given that Ms. Ogea had the burden of proof at trial to show she should recover from Mr. Merritt, we cannot reach the question of whether such licensing elevates an individual to the status of a “professional” as contemplated )14by the legislature and as Ms. Ogea suggests.[8] We do not suggest that mere licensure results in one being considered a professional; but it may be one factor to consider. On the record before us, we find Ms. Ogea did not establish that Mr. Merritt fit the definition of a “professional” under La. R.S. 12:1320(D), such that Mr. Merritt could be held personally liable.
IY. Interpretation and Application of the Exceptions to Limited Liability for a “Negligent or Wrongful Act”
The third and final exception that we are called upon to interpret removes the limitation of liability when a claimant “by law” has a cause of action against a member of an LLC individually for a “negligent or wrongful act.” See La. R.S. 12:1320(D). Like the other exceptions already examined, the exception for a “negligent or wrongful act” does not define those terms and requires an evaluation of where a cause of action may be established “by law.” See La. R.S. 12:1320(D). Unlike the other exceptions, the “negligent or wrongful act” exception does not suggest a singular statutory definition. Indeed, the “negligent or wrongful act” exception differs from the other exceptions examined because the “negligent or wrongful act” exception contains two distinct concepts (i e., the exception applies to an act that is “negligent” or an act that is “wrongful”).
*900 | iBMr. Merritt argues that the terms “negligent” act and “wrongful act” are simply shorthand for “torts.” Mr. Merritt further argues that if his conduct cannot be construed to be a tort, then the exception to limited liability for “negligent or wrongful act” does not apply him.
Certainly, “negligent” act and “wrongful act” are common features of tort law. The cornerstone of tort liability, La. C.C. art. 2315, is indeed cast in very similar terms that encompass the concepts of being “negligent” and committing a “wrongful act.” See La. C.C. art. 2315 (“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”). However, “negligent” act and “wrongful act” are concepts also employed synonymously outside tort law.
For example, these concepts can be found in prominent areas of the law, such as in criminal law. See La. R.S. 14:8(3) (“Criminal conduct consists of: ... Criminal negligence that produces criminal consequences.”). The concept of being “negligent” is embraced by this statute.[9] Additionally, a “wrongful act” appears to be analogous to “[a]n act ... that produces criminal consequences” where there is either “criminal intent” or “where there is no requirement for criminal intent.” See La. R.S. 14:8(1) and (2); see also La. R.S. 14:10 (defining acts produced by specific and general intent under criminal law).
The concepts of a “negligent or wrongful act” can also be found in more arcane areas of the law, such as the law governing bonds for court reporters and even in mineral law. See La. R.S. 13:961(B) (“Any party litigant shall have a right to sue on said bond for any damages sustained by said party litigant by any wrongful act or | T fineglect of duty committed or omitted by the official court reporters in the performance of the duties of official court reporters.”); see also La. R.S. 31:12 (“the owner of land may protect his rights in minerals against trespass, damage, and other wrongful acts of interference by all means available for the protection of ownership.”). ,
Because these concepts appear with great frequency outside of tort law, we find that the terms “negligent” act and “wrongful act” as employed in La. R.S. 12:1320(D) are not limited to “torts.” We are, however, equally mindful that the terms “negligent” act and “wrongful act” are part of an exception in subsection (D) and that the general rule, and hence the general goal, of the limited liability provision in subsection (B) is to afford limited liability. Compare La. R.S. 12:1320(B) and (D); see also Deborah A. Wisnowski, Comment: The Louisiana Limited Liability Company Law: A Gumbo of Previously Existing Business Entities, 39 Loy. L.Rev. 185, 191 (Spring 1993) (noting the “LLC’s objective is to offer its members liability exposure limited to each member’s capital contribution.”). Therefore, to accord the terms “negligent” act and “wrongful act” them commonly understood meaning while also respecting the general limitation of liability, we find the following four factors assist our inquiry: 1) whether a member’s conduct could be fairly charac *901 terized as a traditionally recognized tort; 2) whether a member’s conduct could be fairly characterized as a crime, for which a natural person, not a juridical .person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member’s capacity as a member.
These four factors have been drawn primarily from statutes and/or jurisprudence, as follows.
| ^The Tort Factor
As noted earlier, the terms “negligent” act and “wrongful act” are common features of tort law and are encompassed by La. C.C. art. 2315. Therefore, if a traditional tort has been committed against any cognizable victim(s), that situation weighs in favor of the “negligent or wrongful act” exception and in favor of allowing the victim/s) to recover against the individual tortfeasor(s). See H.B. “Buster” Hughes, Inc. v. Bernard, 318 So.2d 9, 12 (La.1975). This court in Bernard cited La. C.C. art. 2315 for the proposition that corporate officers may be held liable as follows:
The law is settled that if an officer or agent of a corporation through his fault injures another to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the officer or agent is liable personally to the injured third person, and it does not matter that liability might also attach to the corporation.
Bernard, 318 So.2d at 12.
Although Bernard was decided before Louisiana recognized LLCs, “LLCs are not different from corporations in any sense that would justify a different approach to such questions of personal liability.” 8 Glenn G. Morris & Wendell H. Holmes, Louisiana Civil Law Treatise: Business Organizations, § 44.06 (2013 ed.).[10] Of course, a claimant must prove all elements of a claim to succeed in a tort action. Applying the rationale of Bernard, as well as black-letter tort law, when examining whether a member of an LLC can be personally liable in tort, the 11sthreshold question to be asked regarding the member is therefore: “Was any duty of care owed to plaintiff (was it a foreseeable risk)?” See 12 William E. Crawford, Louisiana Civil Law Treatise: Tort Law § 4:2 (2d ed.2013), citing Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972), and Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
To reiterate, the duty we are discussing here must be a duty- in the tort sense, not in the contractual sense. The liability of the LLC is not before us, and we are not called upon to determine in this case whether a breach of contract has been committed by the LLC. What we are instead tasked with determining is a more limited question, i.e., whether a member of an LLC can be held personally liable for *902 conduct undertaken in furtherance of the LLC’s contract. Importantly, when applying the tort factor to the facts of record, the member’s tort duty embodied in La. R.S. 12:1320(D) must be something more than the duty inherent in the LLC’s contract not to engage in poor workmanship; otherwise, the general rule of limited liability in La. R.S. 12:1320(B) would be negated in any case where an LLC had a .contractual duty to the claimant not to engage in poor workmanship. See McLane Southern, Inc. v. Bridges, 11-1141, pp. 6-7 (La.1/24/12), 84 So.3d 479, 483.

The Criminal Conduct Factor

As noted earlier, negligence is a statutorily-recognized element of certain crimes and a “wrongful act” can be the product of specific or general criminal intent. Therefore, if the conduct at issue constitutes a crime, that fact weighs in favor of the “negligent or wrongful act” exception and in favor of allowing the victim(s) to recover against the offender. Recalling that La. R.S. 12:1320(D) allows a claimant to recover from a member of an LLC in certain circumstances when the claimant has hfl“any rights” established “by law,” we note that in criminal law, the right of restitution may be expressly granted to a victim. See, e.g., La.C.Cr.P. art. 895.1 (describing restitution as a condition of probation). In this specific example of restitution as a condition of criminal probation, it would be inequitable and contrary to the plain language of La. R.S. 12:1320(D) to shield a person from liability under the civil laws when that person has committed a crime, simply because the person is a member of an LLC.[11]
Notably, only those crimes for which a natural person, not a juridical person such as an LLC, could be held culpable, should be considered. To allow consideration of crimes applicable to only juridical persons would thwart the general rule in La. R.S. 12:1320(B), which exempts members of an LLC from being liable for the company’s debts.
Because the facts of the instant case deal with construction defects, we recognize that “[e]ngaging in business of contracting without authority” of a valid contractor’s license is a crime. See La. R.S. 37:2160 (defining such crime as a misdemeanor). The authority of a contractor’s license may be granted to either a juridical or a natural person. See La. R.S. 37:2150.1 (defining in subsection (4)(a) “contractor” as a “person,” and defining in subsection (9) “person” to mean “any individual, firm, partnership, association, cooperative, corporation, limited liability company, limited' liability partnership, or any other entity recognized by Louisiana |2(llaw”). Therefore, if a member of an LLC personally acts in the capacity as a contractor without proper licensing authority accorded to himself or to the LLC,[12] *903 that situation would weigh in favor of holding the member personally liable. This is but one example, culled as a variant of the facts at hand, of how a civil claimant might establish the factor of criminal conduct.
In any event, where a civil claimant can show that a member’s criminal conduct has established a right of recovery in favor of the claimant, that situation weighs in favor of holding the member personally liable for the conduct. Allowing criminal conduct to factor into whether a member should be personally liable is consistent with La. R.S. 12:1315, which allows an LLC’s articles' of organization or written operating agreement to “[p]rovide for indemnification of a member or members, or a manager or managers, for judgments, settlements, penalties, fines, or expenses incurred because he is or was a member or manager,” except that no indemnity can be provided for certain criminal violations: “No provision [of the articles of organization or written operating agreement] shall limit or eliminate the liability of a member or manager for the amount of a financial benefit received by a member or manager to which he is not entitled or for an intentional violation of a criminal law.” La. R.S. 12:1315(B). See also 4 RobeRT J. Haft & Peter M. Fass, Tax-Advantaged Securities § 5:48 (2008) (“A member or manager is liable, however, for his own acts or omissions, including liability for a crime ....”).
Because La. R.S. 12:1320(D) allows recovery against a member when the claimant shows “any rights which [the claimant] may by law have against a member,” we see no reason to require that the member be actually convicted of the crime to | M establish the factor of criminal conduct as a “negligent or wrongful act.” In actuality, La. R.S. 12:1320(D) does not mandate the claimant to have already obtained a “remedy” under the law, only that the claimant demonstrates by a preponderance of the evidence the existence of “any rights which [the claimant] may by law have against a member.” (Emphasis added.) See La. R.S. 1:3 (“The word ‘shall’ is mandatory and the word ‘may’ is permissive.”); see also Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 1095-96, 262 So.2d 328, 333-34 (1972) (noting the traditional legal distinction between a “right” and a “remedy”).
Therefore, similar to the tort inquiry, the pivotal question regarding a member’s alleged criminal conduct is whether that conduct demonstrates the member breached a duty owed to the claimant.[13] As this court explained:
Criminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability; but they may be guidelines for the court in fixing civil liability. Laird v.. Travelers Ins. Co., 263 La. 199, 267 So.2d 714, 717 (1972). In determining the existence of a civil duty, our inquiry must focus on whether the statute was intended to protect a particular plaintiff from the type of harm which ensued. Boyer v. Johnson, 360 So.2d 1164, 1169 (La.1978); see also Laird, 267 So.2d at 717.
*904 Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 793 (1992).

The Contract Factor

If the member’s conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC, that situation weighs against holding the member personally liable for the conduct. This factor is directly drawn from La. R.S. 12:1320(B), particularly the following language: “no member, manager, employee, |2gor agent of a limited liability company is liable in such capacity for a[n] ... obligation ... of the limited liability company.” The Civil Code establishes that a contract is one type of obligation. See La. C.C. art. 1756 (“An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obli-gee.”); see also La. C.C. art.1906 (defining “contract” as “an agreement by two or more parties whereby obligations are created, modified, or extinguished.”). Because an obligee is a “person” (La.C.C. art. 1756) and an LLC is a “juridical person,” (La.C.C. art. 24, supra), it follows that if the reason a member is engaged in the conduct at issue is to satisfy a contractual obligation of the LLC, then the member should be more likely to qualify for the protections of the general rule of limited liability in La. R.S. 12:1320(B). Cf. Haft & Fass, supra, § 5:48 (“A member or manager is liable, however, for his own acts or omissions, including ... a breach of contract undertaken in his own right.”).

The Factor of Acting Inside or Outside the LLC

There may be instances where this inquiry overlaps with the tort inquiry and/or contract inquiry. For example, as just noted, a member can be liable for “a breach of contract undertaken in his own right.” Cf. Haft & Fass, supra, § 5:48. Even so, the distinction of acting “outside” of the capacity as a member is a factor recognized in the jurisprudence and a distinction which, if present, weighs in favor of removing an individual from the protection of limited liability. See, e.g., Petch v. Humble, 41,301 (La.App. 2 Cir. 8/23/06), 939 So.2d 499, 504:
To have meaning within the statute [La. R.S. 12:1320], the phrase “or other negligent or wrongful act by such person” must refer to acts that are either done outside one’s capacity as a member, manager, employee, or agent of a limited liability company or which while done in one’s capacity as a member, manager, employee, or agent of a limited liability company also violate- some personal duty owed by the individual to the injured party. In other words, some duty owed by the individual [^defendant to the plaintiff outside his capacity as a member must have been breached. [Emphasis added.]
The Civil Code suggests an example of when a person might act outside the capacity of a member of an .LLC and, thereby, undertake a “personal duty,” the negligent or wrongful breach of which could subject the member to personal liability. For example, in a purely personal capacity, a member might become a “mandatary” for the claimant. See La; C.C. art. 2989 (“A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal.”). If a member becomes a mandatary and breaches the member’s duties to the principal, such a situation would weigh in favor of finding that the member acted outside the capacity of an LLC and, therefore, may be personally liable for the breach.' See La. C.C. art. 1757 (“Obligations ... also arise directly from the law, regardless of a declaration of will, in instances such as wrongful *905 acts [and] the management of the affairs of another —”).
More typical than a member becoming a mandatary for the claimant, according to commentators, is the situation in which an individual fails to act “inside” the structure of the business entity when confect-ing a contract. “[I]n . a small business setting ... it is fairly common for shareholders to act in representative capacities on behalf of their closely-held corporations (as officers, agents or employees) without formally disclosing to the third party that is this capacity in which they are acting.” Morris & Holmes, supra, § 33.04. Consequently, the individual is considered “an undisclosed agent personally liable for the contracts that he negotiates on his principal’s behalf.” Id.; see also Id., § 44.06 (reasoning the same rule should apply to members of an LLC). While this situation directly implicates contract law, it is nevertheless an example of acting “outside” the structure of an LLC. Because this ^situation implicates the law of mandate in the Civil Code and because of the prevalence in the jurisprudence of the distinction of acting “inside” or “outside” of the LLC, we adopt the “inside/outside” inquiry as one of the factors to be considered. Applying the Four Factors
A court is to evaluate each situation on a case-by-case basis and consider each of the above factors when determining whether the general rule of limited liability must yield to the exception for a member’s “negligent or wrongful act.” La. R.S. 12:1320(D). Because “negligent” act and “wrongful act” are common features of tort law, the tort factor may be dispositive.[14] Stated differently, upon a showing that a member owed a duty in tort to the claimant, the breach of such duty could pave the way to a member’s personal liability for the tort.
The existence of a duty is a question of law. Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 292 (La.2/22/93). “Simply put, the inquiry is whether the plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support his claim.” Id.
Turning to the instant record, we find Ms. Ogea established nothing at trial' from which we can discern a tort duty owed to her by Mr. Merritt. The record shows two salient facts regarding Mr. Merritt’s conduct: 1) he operated a bulldozer to prepare the concrete “pad” and 2) he supervised the contractor who poured the concrete foundation. These acts fall within the contract.
This conduct stands in sharp contrast to the oft-commented example of a contractor committing a personal injury while driving, which would present a far clearer justification for finding the existence of a tort duty. See Karin Schwindt, 25Limited Liability Companies: Issues in Member Liability, 44 UCLA L.Rev. 1541, 1548 n. 35 (June 1997) (Citing other commentaries, the author notes: “Consider, for example, a[n] LLC member who, in making a delivery for the limited liability company, negligently injures a pedestrian. Ordinary principles of tort law inculpate the member.”).
Stated differently, a showing of poor workmanship arising out of a contract entered into by the LLC, in and of itself, does not establish a “negligent or wrongful act” under La. R.S. 12:.1320(D). To hold that poor workmanship alone sufficed to establish personal liability would allow the *906 exception in La. R.S. 12:1320(D) to negate the general rule of limited liability in La. R.S. 12:1320(B). Here, Ms. Ogea adduced evidence at trial equating Mr. Merritt’s conduct with poor workmanship and showed only that his conduct was undertaken in furtherance of the legitimate goals of the contract with the LLC.
The second factor requires us to determine whether the conduct at issue violates a criminal statute intended to protect the claimant from the type of harm which ensued. In the record, there has been no suggestion that Mr. Merritt engaged in any criminal conduct, such as acting as a contractor without proper licensing. We therefore find the criminal conduct factor unmet.
The third factor requires us to examine whether the member’s conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC. Especially relevant to our examination is La. C.C. art.1967, which in pertinent part, provides: “Cause is the reason why a party obligates himself.” Turning to the facts of this case, the contract between the LLC and Ms. Ogea required the preparation and subsequent pouring of a concrete slab foundation. Mr. Merritt’s actions in preparing the “pad” and supervising the concrete subcontractor were in 12(jfurtherance of a contract binding on the LLC. The “contract” factor, therefore, weighs against holding Mr. Merritt personally liable for that conduct.
The fourth factor requires us to examine whether the conduct at issue was done outside the member’s capacity as a member of an LLC. We find no record evidence to suggest Mr. Merritt acted outside the structure of the LLC. At trial, Ms. Ogea testified that she understood her contract was with Merritt Construction, LLC. Therefore, there is no issue of an undisclosed mandatary relationship for which the LLC member could be held personally liable. From all that appears, Mr. Merritt acted “inside” rather than “outside” the structure of the LLC, a factor which weighs in favor of sustaining the general shield of limited liability.
V. Conclusion
To this point, we have not addressed the public policy implications of limited liability and its exceptions, though we have been greatly urged by the parties and by an amicus curiae homebuilder’s association to adjudicate this case based on public policy considerations. It has been unnecessary for us to balance competing public policy considerations because this case is largely resolved by interpreting a single statute. The public policy of this state is embodied in that statute and as we have recently reiterated, “courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws.” See Retired State Employees Association v. State, 13-0499, p. 7 (La.6/28/13), 119 So.3d 568, 573, quoting Ferguson v. Skrupa, 372 U.S. 726, 730, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).
Having interpreted La. R.S. 12:1320 as a matter of first impression for this court, we conclude our analysis with the following observations regarding the economic and practical operation of that statute. An LLC is a business entity separate from its members and the liability of members “as such” is governed “solely and [ 27exclusively” by the law of LLCs. See La. R.S. 12:1320(A). From the time the legislature allowed the formation of LLCs, it was recognized that the new entity would be appealing to individuals who previously operated as an “informal, family-owned, and operated business.” See Wisnowski, 39 Loy. L.Rev. at 211. Such business proprietors were subject to personal liability if they operated outside a corpo *907 rate structure or if they operated as a general partnership. See W. Philip Clinton & Douglas N. Currault II, The Birth of Two Business Entities: Limited Liability Companies and Registered Limited Liability Partnerships, 40 La. B.J. 289 (Oct. 1992). The legislature allowed individuals who chose to conduct business through an LLC the economic incentive of limited liability (and the legislature also allowed other tax incentives not here relevant). Id. However, as is readily apparent in La. R.S. 12:1320(B) and (D), the legislature did not allow an infinite shield against personal liability for individuals choosing to conduct their business through an LLC.
Instead, in La. R.S. 12:1320(B), the legislature stated a general rule of limited liability. This general rule effectively operates as a presumption that the members are not personally responsible for the liabilities of the LLC beyond the member’s capital contributions to the LLC. However, in La. R.S. 12:1320(D), the legislature has established the criteria for rebutting the presumption that members are not personally liable. Ms. Ogea failed to carry her burden at trial to rebut the presumption that Mr. Merritt is protected by a limitation of liability and is not personally liable in connection with home construction defects.
As final observations, we note certain economic and practical implications that are not reached in this opinion. Nothing in this opinion should be construed to relieve a member from liability when the member, not the LLC alone, personally obligates the member in a contract. See MoRRis & Holmes, supra § 44.06. | ¡.^Likewise, and as a practical matter relating specifically to home construction contracts like the contract in this case, nothing in this opinion prevents the parties to the contract from securing a performance bond, which may provide recourse to an owner in the event a general contractor fails to satisfactorily build a home. See La. R.S. 9:4812(C) (“The condition of the bond shall be that the surety guarantees: ... (2) To the owner, the complete and timely performance of the contract unless such guarantee is expressly excluded by the terms of the bond.”).
DECREE
The judgment of the court of appeal is reversed insofar as it finds the individual member of the LLC personally liable. Judgment is hereby rendered in favor of the individual member of the LLC dismissing all claims against him. In all other respects, the judgment of the court of appeal is affirmed.
REVERSED IN PART; JUDGMENT RENDERED.
JOHNSON, Chief Justice, concurs in result.
GUIDRY, Justice, concurs and assigns reasons.
CLARK, Justice, concurs and assigns reasons.

. The liability of the LLC is not before this court; therefore, nothing in this opinion should be construed to disturb the rulings of the lower courts casting the LLC in judgment.

. The answer and reconventional demand were filed on behalf of the LLC only. After the denial of Mr. Merritt’s exception, Mr. Merritt did not file an answer to Ms. Ogea's petition.

. When an LLC is involved, as opposed to a corporation, it may be more correct to refer to "piercing the company veil."

. In Charming Charlie, 11-2254 at 6, 97 So.3d at 598, the court noted:
Louisiana courts have allowed a piercing of the corporate veil under only two exceptional circumstances, namely, where the corporation is an alter ego of the shareholders and the shareholders have used the corporation to defraud a third party (the "alter ego” doctrine) and where the shareholders have failed to conduct a business on a "corporate footing” to such an extent that the corporation ceases to be distinguishable from its shareholders. [Citation omitted.]
The court stated: “[T]he same policy considerations relevant to a determination of piercing the veil of a corporation also apply to a limited liability company.” Id. Accordingly, the court granted the plaintiff leave to amend the pleadings to state a cause of action by which the veil of an LLC might be pierced. Id., 11-2254 at 8-9, 97 So.3d at 599-600.

. Piercing the corporation or company veil results in personal liability of the owner of the corporation or LLC.

. Typically, mixed questions of law and fact are subject to the manifest error standard of review. See Demma v. Automobile Club Inter-Insurance Exchange, 08-2810, p. 7 n. 4 (La.6/26/09), 15 So.3d 95, 100 n. 4. However, "where, as here, there is no dispute as to the dispositive facts, the issue can be decided as a matter of law and the review is de novo." Id., citing Kevin Associates, L.L.C. v. Crawford, 03-0211, p. 15 (La. 1/30/04), 865 So.2d 34, 43.

. In our survey of the law, and only for the sake of completeness, we note another statute *897 that may have afforded a separate shield to a contractor. In pertinent part, La. R.S. 9:2771 provides: "No contractor, including but not limited to a residential building contractor ... shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration, or defect was due to any fault or insufficiency of the plans or specifications.” Because there is no record evidence regarding the specifications called for by the plans, we express no opinion on the applicability of this statute.

. In evaluating Ms. Ogea’s suggestion that Mr. Merritt's alleged role as a contractor should be equated with the role of a professional, we observe that Louisiana’s limited liability law appears to draw a distinction between a person engaged in a “profession” and a person engaged in a "trade.” See La. R.S. 12:1301(A)(2) (defining "business” to mean "any trade, occupation, profession, or other commercial activity, including but not limited to professions licensed by a state or other governmental agency”). This same distinction was observed by Judge Caraway in a case concerning construction defects in a water feature. See Regions Bank v. Ark-La-Tex Water Gardens, LLC, 43,604 (La.App. 2 Cir. 11/05/08), 997 So.2d 734. Judge Caraway dissented from the imposition of personal liability upon a member/manager of an LLC who was a licensed horticulturist, landscape contractor, and irrigator. Id., 997 So.2d at 741 (Caraway, J., concurring in part and dissenting in part). Citing La. R.S. 12:1301(A)(2), Judge Caraway opined that the member/manager "worked clearly in a trade business as opposed to what would be generally understood as a profession.” Id.

. For present purposes, under principles of both logic and statutory interpretation, if a person is "negligent” the person has also engaged in "negligence," because "the common and approved usage of the language" (La. R.S. 1:3) treats the words "negligent” and "negligence” as interchangeable, according to their grammatical context. See Black’s Law Dictionary 1056 (7th ed.1999) (defining negligence in terms of the actions of "a negligent party”) citing W. Page Keeton, et al., The Law of Torts § 28, at 169 (W. Page Keeton ed., 5th ed.1984).

. As we have earlier observed, "this Court must assume the Legislature was aware of existing laws on the same subject.” Holliday, 09-0093 at 6; 27 So.3d at 817. If the legislature intended to deviate from the principle that an officer/agent of a corporation can incur personal liability for the officer’s/agent’s tortious conduct, we would expect to find in La. R.S. 12:1320 some language establishing a different principle as to members of an LLC. What we find, instead, is that La. R.S. 12:1320 does not define key terms. Therefore, we are left to conclude that the legislature considered the liability of a member of an LLC to be akin to the liability of a corporate officer/agent, and we are directed to search for meaning of key terms from related areas of the law. See La. C.C. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other.”).

. An order of restitution under criminal law has powerful consequences for a failure to comply, such as arrest and/or revocation of probation. See La.C.Cr.P. arts. 899(A) and 900(A)(5). Even so, an aggrieved party has a wider array of remedies under civil law besides the payment of money as a condition of probation as provided under criminal law. Notwithstanding an order of monetary restitution in a criminal case, an aggrieved party may for tactical reasons still wish to pursue a civil judgment. For instance, in a civil case, an aggrieved party may prefer specific performance of an obligation rather than the payment of money. See, e.g., La. C.C. art. 1986 ("Upon an obligor's failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.”).

. We are not tasked here with deciding the extent to which an individual member acts *903 properly within the authority of a contractor's license granted to the member’s LLC. Nothing in this opinion should be construed to decide that question.

. Unrelated criminal conduct is simply irrelevant and cannot advance a claimant's burden of proving that an exception to limited liability applies. Drawing as an example a variant from the facts of this case, we would be hard pressed to see how a member receiving a traffic citation one day on the way to the job site would breach a duty owed to a landowner who contracted with the member’s LLC for construction of a home.

. Another potentially dispositive factor might exist in the situation when a court has convicted an individual of a crime and ordered restitution. Because that is not the case here, we do not analyze that situation further.