# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-1302

JENNIFER DIANE NUNEZ

VERSUS

PINNACLE HOMES, L.L.C. AND
SUA INSURANCE COMPANY

\*\*\*\*\*\*\*\*\*\*\*\*

**ON REMAND FROM THE LOUISIANA SUPREME COURT**

\*\*\*\*\*\*\*\*\*\*\*\*

**APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-18501
HONORABLE PENELOPE RICHARD, JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER
JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED.**

**Amy, J., dissents and assigns reasons.**

John C. Anderson
P. O. Box 82982
Baton Rouge, LA 70884
COUNSEL FOR DEFENDANTS-APPELLANTS:
    Pinnacle Homes, L.L.C. and Allen Lenard

J. Bryan Jones, III
P. O. Box 4540
Lake Charles, LA 70606
COUNSEL FOR PLAINTIFF-APPELLEE:
    Jennifer Diane Nunez

**PAINTER, Judge.**

This matter has been remanded to this court by the Louisiana Supreme Court with instructions to consider its holdings in *Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So.3d 888. After considering *Ogea*, we again affirm.

**FACTS**

In written reasons for judgment, the trial court correctly outlined the underlying facts of the case as follows:

> On January 8, 2008, JENNIFER DIANE NUNEZ and PINNACLE HOMES, LLC entered into a Cost Plus Contract - Fixed Fee contract for the construction of a new home located on 111 Boudreaux Lane, in the Grand Lake area, in Cameron Parish, Louisiana. The fixed fee of the contract was $33,748.00, and the pre-construction estimate of the construction costs was $277,772.00. (See Plaintiff s Exhibit No. 4).

> Pertinent provisions of the construction contract are located in Section 4.2 and Section 4.4. Section 4.2 of the contract, provides that "[a]ll work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws." Section 4.4 provides that "[c]ontractor shall obtain all permits necessary for the work to be completed."

> . . . .

> Accu-Line Surveying, Inc.[] prepared an updated elevation certificate on or about September 18, 2007, which is dated March 12, 2006, which indicated that the Base Flood Elevation was 9.0 feet and Advisory Base Flood Elevation was 10.0 feet for the Nunez home. (See Plaintiff's Exhibit. No. 1). The elevation certificate also included the lowest adjacent grade at 4.61 feet and the highest adjacent grade at 5.48 feet.

> According to the testimony of Ernestine Horn, Cameron Parish Administrator, the base flood elevation is required by FEMA and the advisory base flood elevation is required by the parish. After Hurricane Rita, the State of Louisiana mandated all coastal parishes, including Cameron Parish, to add one (1) foot to all of the elevations contained in the flood elevation maps. (See Trial Transcript of 8/1/2012, p. 56).

> The permit issued by the Cameron Parish Police Jury for the construction of plaintiff's home[] required that the base flood elevation be 10 feet for the plaintiff's home. (See Plaintiff's Exhibit No. 6).

1

The post-construction elevation certificate prepared by Accu-Line Surveying, Inc.[] indicates that the elevation of plaintiiff's home is 8.66 feet. It also indicates that the lowest elevation of machinery or equipment servicing the building is 8.10 feet. (See Plaintiff's Exhibit No. 2).

. . . .

The plaintiff's home is below the required base flood elevation of 9 feet as required by FEMA and below the advisory base flood elevation of 10 feet as required by the permit issued by the Cameron parish Police Jury

Nunez filed this suit for breach of warranties and contract naming Pinnacle and SUA Insurance Co. (SUA) as defendants. She amended the petition to include Lenard, the owner of Pinnacle, and American Safety Casualty Insurance Co. (ASCI) as defendants. Nunez voluntarily dismissed the claims against SUA. The claims against ASCI were dismissed pursuant to motion for summary judgment.

The trial court denied Lenard's Exception of No Cause of Action and Pinnacle's motion for an order staying the proceedings and ordering arbitration. The matter was tried, and the trial court rendered judgment in favor of Plaintiff and awarded damages. Pinnacle and Lenard appealed the matter to this court. This court affirmed finding no error in the judgment of the trial court. Pinnacle and Lenard took writs to the Louisiana Supreme Court, and the supreme court remanded the matter to this court.

## DISCUSSION

On appeal, Defendants disputed the trial court's finding that Plaintiff suffered damages because of the incorrect elevation of her house and that Lenard was personally liable for the failure to correctly elevate the house. On remand, we need not reconsider the issue of damages. We include by reference of finding with regard to damages from our original opinion herein. Here, we consider whether

Nunez proved personal liability on the part of Lenard, in light of the supreme court's holding in *Ogea*.

*Personal Liability of Lenard*

The trial court gave the following reasons for its determination of personal liability:

> The defendant, ALLEN LENARD, committed professional negligence by not properly calculating and/or supervising the amount of dirt that would be required to bring the property to proper grade/elevation, and by failing to have an elevation shot performed after the dirt work was completed and prior to beginning construction on plaintiff's home. Although Mr. Lenard initially testified in his deposition and on the first day of trial that he consulted with Keith Daigle on the calculation of the amount of dirt, he later contradicted his testimony at the second day of trial and testified that he left that up to the dirt contractor. Mr. Lenard also testified on February 21, 2013, that it was usually the dirt contractor that would be responsible for obtaining another elevation shot after the dirt work was completed. His testimony was contradicted by his deposition testimony wherein he testified that his company had the equipment to perform the elevation shot, and that Cletis or Keith Daigle would have been the one to do it. Obviously, it was not done by Keith Daigle the dirt contractor, nor Cletis, an employee of PINNACLE HOME, LLC. He later testified during the defense's case that it would have been Martine Nocilla, with his company, that would have been responsible for shooting the elevation, because Cletis was not working with him at the time of Mrs. Nunez's foundation work. Nevertheless, ultimately, as the licensed contractor on the job, it was Mr. Lenard's responsibility to ensure that both of these things were done and done correctly. Therefore, the court finds that the defendant, ALLEN LENARD, is liable to plaintiff personally pursuant to LSA R.S. 12:1320(D). *See Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.,* 997 So.2d 734, (La. App. 2 Cir. 11/5/08), *writ denied*, 5 So.3d 119 (La. 3/13/2009).

The court in *Ogea* set out factors gleaned from La.R.S. 12:1320(D), to be used in determining whether a member, manager, employee or agent of a limited liability company may be held personally liable for damage causing acts or failures to act. La.R.S. 12:1320(D) provides that:

> A. The liability of members, managers, employees, or agents, as such, of a limited liability company organized and existing under this Chapter shall at all times be determined solely and exclusively by the provisions of this Chapter.

3

B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.

C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

The trial court found personal involvement and inaction by Lenard which it found constituted a "breach of professional duty or other negligent or wrongful act." *Id.* One of the exceptions to the protection granted a member, manager, employee, or agent of a limited liability company arises from breach of a professional duty. The court in *Ogea* noted that the statute does not define the phrase "breach of a professional duty." The court further noted that:

Again, in searching for the intended meaning of "any breach of professional duty" in La. R.S. 12:1320(D), we recall that "this Court must assume the Legislature was aware of existing laws on the same subject." Holliday, 09-0093 at 6, 27 So.3d at 817. Recognizing that the word "professional" is the focus of the quoted exception, the following principle must be observed as well: "Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." La. R.S. 1:3.

When the LLC statutes were enacted, "professional" had a clearly defined technical meaning within the law of business entities. *See* JAMES S. HOLLIDAY, JR., & H. BRUCE SHREVES, LOUISIANA PRACTICE SERIES: LOUISIANA CONSTRUCTION LAW § 1:9 pp. 10-11 (2013) ("Since 1964, professional law corporations have been possible in Louisiana. In 1968, with recodification of Louisiana's corporate laws, professional medical corporations were also permitted. Since then, Louisiana has enacted statutory provisions for professional corporations for the

4

dental, accounting, chiropractic, nursing, architectural, optometry, psychology, veterinary medicine and architectural-engineering.

The supreme court in *Ogea*, however, did not reach the question of whether a licensed contractor is a professional for purposes of the exception. In that case, the court found that it did not need to reach the question because there was no evidence of record that Merritt was a licensed contractor. In this case, the evidence clearly supports the conclusion that Lenard held a contractor's license individually. Therefore, we must consider the question of whether a licensed contractor is a professional so that a breach of professional duty would render him personally liable for the damage incurred by Nunez.

Although a building contractor is not one of the "legislatively recognized professions" set out in *Ogea*, we will look to other sources to determine whether, under the facts of this case, a licensed contractor should be recognized as a professional.

BLACK'S LAW DICTIONARY 1210 (6th ed. 1990) defines "professional" as: "One engaged in one of the learned professions or in an occupation or in an occupation requiring a high level of training and proficiency." We further note that the legislature has, in La.R.S. 39:1484, where it defines terms used in the chapter on public finance, defined "professional service" as follows:

> [W]ork rendered by an independent contractor who has a professed knowledge of some department of learning or science used by its practical application to the affairs of others or in the practice of an art founded on it, which independent contractor shall include but not be limited to lawyers, doctors, dentists, psychologists, certified advanced practice nurses, veterinarians, architects, engineers, land surveyors, landscape architects, accountants, actuaries, and claims adjusters. A profession is a vocation founded upon prolonged and specialized intellectual training which enables a particular service to be rendered. The word "professional" implies professed attainments in special knowledge as distinguished from mere skill. For contracts with a total amount of compensation of fifty thousand dollars or more, the definition of "professional service" shall be limited to lawyers, doctors, dentists, psychologists, certified advanced practice nurses,

veterinarians, architects, engineers, land surveyors, landscape architects, accountants, actuaries, claims adjusters, and any other profession that may be added by regulations adopted by the office of contractual review of the division of administration.

Further, in La.R.S. 3:3804, the legislature distinguishes between professions and occupations regulated by the Horticulture Commission, noting that arborists, retail florists, wholesale florist, landscape horticulturist, landscape architect, utility arborists, and landscape irrigation contractors are professionals while nursery stock dealers and cut flower dealers considered to be practicing occupations. We therefore conclude that professional status may extend beyond the narrow scope of the professions enumerated in the citation from *Ogea* hereinabove.

Our analysis of the record and the statutes regarding licensing and regulation of contractors convinces us that, with regard to the construction contract with Nunez, Lenard was acting as a professional with attainments in special knowledge, particularly as evidenced by his having attained licensure from the state, as distinguished from mere skill. We note that he tested for environmental remediation, commercial contracting, and residential contracting and, according to his testimony, received "pretty much the highest scores you can get." Therefore, we must determine whether the trial court was in error in finding that Lenard breached a professional duty owed to Nunez.

There can be no question but that the failure to elevate the house as required by the permit issued by Cameron Parish is a defect. Lenard's own testimony indicates that it was his negligence which resulted in this defect. He testified in his deposition that he was aware of the FEMA requirements for home building in Cameron Parish. He states in trial testimony that he was in possession of the building permit but thought that the house needed to be elevated to nine feet, rather than the ten indicated by the permit. The house was not even elevated to the nine

6

feet he believed to be required. As noted by the trial court, Pinnacle had the equipment to shoot the elevation and that a Pinnacle employee, who as the trial court noted, would have been under his direct supervision as contractor, would have been responsible to do so. Lenard indicated in deposition testimony that neither he nor anyone in his employ checked for a proper elevation after dirt work to raise the site elevation was finished. As in *Matherne v. Barnum*, 11-0827 (La.App. 1 Cir. 3/19/12), 94 So.3d 782 and *Regions Bank v. Ark-La-Tex Water Gardens, L.L.C.*, 43,604 (La.App. 2 Cir. 11/5/08), 997 So.2d 734, *writ denied*, 09-0016 (La. 3/13/09), 5 So.3d 119, the negligence of the contractor resulted in a breach of a professional duty such that he is personally liable for the resulting damages.

## CONCLUSION

Having found no error in the judgment of the trial court, we affirm. Costs of this appeal are assessed to Defendants-Appellants, Pinnacle Homes, L.L.C. and Allen Lenard.

**AFFIRMED.**

NUMBER 13-1302

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JENNIFER DIANE NUNEZ

VERSUS

PINNACLE HOMES, LLC, ET AL.

AMY, J., dissenting.

After reconsideration of this matter in light of the supreme court's instruction on remand, I continue to conclude that the trial court erred in finding Mr. Lenard personally liable. As I expressed in my original dissent, I do not find that a determination of personal liability was appropriate pursuant to La.R.S. 12:1320 or the analysis provided in *Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So.3d 888.

Certainly, the initial inquiry is whether Mr. Lenard, as a contractor, may be considered a "professional" so as to fall outside of La.R.S. 12:1320(B)'s broad pronouncement that unless "otherwise specifically set forth . . ., no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." However, per La.R.S. 12:1320(D), an LLC member/manager may be assessed with liability for "any breach of professional duty or other negligent or wrongful act by such person[.]"

On remand, I again conclude that the breach of professional duty exception invokes those professions whose members owe separate, non-contractual duties to their clients. To apply the exception otherwise would, in my view, open any member or manager of an LLC to personal liability upon a finding of professional

liability. Such potential exposure to liability is at odds with the broad limitation of liability contained in La.R.S. 12:1320(B).

Although *Ogea*, 130 So.3d 888, does not resolve the issue of whether a general contracting license confers a "professional" persona to an individual for purposes of the exception of La.R.S. 12:1320(B), the opinion otherwise notes various instances in which legislation sets apart a "profession" from other defined entities. *Id.* Importantly, contracting is not included among professional corporations listed in the Louisiana Revised Statutes, Title 12. *Id.* Further, and returning to what I find to be an important component of "professional" status, there is no indication that contractors owe a separate, non-contractual duty to their customers as many of the members of the professional corporations listed in Title 12 may. Thus, I maintain my position that the plaintiff did not demonstrate that the "breach of professional duty" exception applied to Mr. Lenard in his personal capacity.

Neither do I find that the plaintiff proved the availability of La.R.S. 12:1320(D)'s alternative cause of action against an LLC member for "other negligent or wrongful act by such person[.]" *Ogea* described four factors for consideration of that exception as follows: 1) whether a member's conduct can be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct can be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the subject conduct was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct was performed outside the member's capacity as a member. *Ogea*, 130 So.3d 888. The latter two elements are particularly instructive in my opinion.

First, it seems apparent to me the conduct now at issue, i.e., the supervision of employees in this aspect of construction, was required by or in furtherance of

2

the contract between the plaintiff and the LLC.  Thus, "it follows that if the reason a member is engaged in the conduct at issue is to satisfy a contractual obligation of the LLC, then the member should be more likely to qualify for the protections of the general rule of limited liability in La.R.S. 12:1320(B)." *Ogea*, 130 So.3d at 904.  Simply, the contract in this case was entered into between the plaintiff and the LLC and the elevation/foundation work was to be performed by that company.  Thus, I again find that Mr. Lenard's role in the supervision of his own employees and/or subcontractors was in furtherance of that contract.

Similarly, and with regard to element Number 4, it is evident that Mr. Lenard's alleged conduct was within the context of his membership in the LLC and not undertaken in a personal capacity.  To the extent that the plaintiff's claim is one alleging poor workmanship, *Ogea*, 130 So.3d at 905-06, explains that "a showing of poor workmanship arising out of a contract entered into by the LLC, in and of itself, does not establish a 'negligent or wrongful act' under La.R.S. 12:1320(D).  To hold that poor workmanship alone sufficed to establish personal liability would allow the exception in La.R.S. 12:1320(D) to negate the general rule of limited liability in La.R.S. 12:1320(B)."  In my opinion, the trial court's findings, under the facts now present, do, in fact, impermissibly allow the exception of Paragraph D to negate the general rule advanced by Paragraph B.

Finding La.R.S. 12:1320(D) inapplicable, I respectfully dissent from the majority opinion.  I re-urge my view that the trial court's finding of personal liability should be reversed.

3