# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 17-473


SOUTHERN COIL TUBING, INC.

VERSUS

ORACLE GAS, LLC, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20154852
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**********

### MARC T. AMY
### JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


**REVERSED IN PART.**



**Daniel C. Hughes**
**126 Heymann Boulevard**
**Lafayette, LA   70503**
**(337) 237-6566**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
      **Delphi Oil, Inc.**
      **Robert E. Brooks**

**L. Lane Roy**
**Brown Sims, PC**
**600 Jefferson Street, Suite 800**
**Lafayette, LA   70501**
**(337) 484-1240**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Southern Coil Tubing, Inc.**

**AMY, Judge.**

This appeal arises out of a claim brought by the plaintiff for a sum allegedly due on an open account and for which the plaintiff also asserted a claim under the Louisiana Unfair Trade Practices Act. The trial court rendered judgment in favor of the plaintiff for $51,000.00 plus legal interest against all three defendants. Two of the defendants appeal. For the following reasons, we reverse in part.

### Factual and Procedural Background

The plaintiff, Southern Coil Tubing, Inc., is a company located in Lafayette, Louisiana. The plaintiff's brief to this court described the type of service work performed by the company as "involv[ing] the use of expensive and highly specialized equipment being brought to existing producing [oil] wells for the purposes of taking certain measures . . . to cause the well to become unclogged and produce additional minerals from the existing well." As owner of all stock in Southern Coil Tubing, Inc., Mr. Carl Guidroz testified before the trial court on behalf of the plaintiff company regarding the events surrounding this dispute.

Mr. Guidroz explained that in the summer of 2014, he received a phone call from Robert Brooks, who "was soliciting some service work" on an oil well in Laurel, Mississippi, and told him "[t]hat the well was for Burke's[1] Energy" (hereinafter "Burke's"). Mr. Guidroz indicated that the coil tubing unit owned by the plaintiff company "was designated and designed strictly for offshore. It can be done for land, it's just a little cumbersome. Takes a little more transportation and trucks to get there." Therefore, Mr. Guidroz testified that he suggested that Mr. Brooks use a local company in Mississippi, because doing so would be quicker,

---

[1] The variations "Burks" and "Burkes" appear in the record and in the briefs to this court. We will use the spelling "Burke's" as it is consistent with the transcript.

more convenient, and less expensive. Mr. Guidroz explained that, in response, "[Mr. Brooks] said he would provide the trucks and also the crane to complete the service. He would provide all the transportation and the cost of the crane to take the unit from Lafayette to location and return." Testifying on behalf of the defense, Mr. Brooks recalled that, in their initial discussions, Mr. Guidroz estimated that the cost would be "between eleven thousand and fifteen thousand five hundred per day" and that the job "would take about a day." The record includes no indication that these discussions were reduced to writing.

Mr. Brooks said that, because he would be traveling via airplane and unreachable by telephone on the day that the job was to be completed, he had signed a check in advance and "instructed the drilling supervisor on the rig that when Mr. Guidroz's hands presented a bill, they were to write the check for the amount[,] which [he] was anticipating to be thirty thousand plus or minus maybe a little more." Mr. Guidroz testified that, upon completing the job, the plaintiff received an Oracle Gas, LLC check[2] for the invoice total of $51,000.00 with "R.E. Brooks" as the signature and dated August 6, 2014, explaining: "[The check] was provided . . . by the supervisor on location . . . and was given to [the plaintiff's] supervisor for payment of the services rendered." However, Mr. Guidroz said that "after depositing the check," he received notice from the bank "that those funds were refused and there was a stop payment on that particular check." In response, Mr. Brooks explained that he was responsible for issuing the stop payment order upon learning that the check had been written in the amount of $51,000.00. He

---

[2] The plaintiff's brief states that Mr. "Guidroz did not understand why an Oracle Gas check was being used[.]" Mr. Guidroz testified on behalf of the plaintiff that he "[does not] know where Oracle comes into play. The only place [he] saw [Oracle] was on the check."

2

clarified that he issued the order because he had anticipated that the invoice total would be between $30,000.00 and $35,000.00, not $51,000.00.

Mr. Guidroz set forth the plaintiff's reasons for the alleged discrepancy between the invoice price and what Mr. Brooks believed to be the quoted price. First, Mr. Guidroz testified that Mr. Brooks ultimately supplied only "[o]ne of three" trucks required for transporting the equipment and that "[t]he truck that showed up on lot to pick up the equipment was a [Delphi] [D]rilling truck." Mr. Guidroz explained that, when he notified Mr. Brooks that more trucks were needed, "[Mr. Brooks] asked [the plaintiff] to provide the transportation and [Mr. Brooks] would pay for it no problem[.]" Thereafter, Mr. Guidroz said that the plaintiff hired and paid a third-party to supply the remaining two trucks.

Additionally, after the equipment made it to the job site and the project began, Mr. Guidroz stated that nitrogen services were required to perform the job. Mr. Guidroz testified that, when he explained this to Mr. Brooks, "[Mr. Brooks] asked [Mr. Guidroz] to provide [nitrogen services] and out of Louisiana[,]" despite Mr. Guidroz's recommendation to use a local Laurel company instead. As with the transportation company, the plaintiff paid the third-party nitrogen company. With regard to both the third-party transportation and nitrogen services, the record contains no indication that these conversations were reduced to writing.

Further, Mr. Guidroz explained that, even though he and Mr. Brooks had discussed the approximate cost and length of time for the job in their initial conversations, "[n]one of the perimeters were provided . . . If some of the perimeters for the log in data would have been provided, [he] could have made a better estimate. But, just a cold call . . . It's speculation." Mr. Guidroz testified that he explained to Mr. Brooks that "[the job] could be one to two days" and that

the plaintiff's employees "don't know, not until [they] actually get on location and see what the conditions are."

After the stop payment order, Mr. Guidroz and Mr. Brooks attempted to settle the dispute, but an agreement was never reached. Mr. Guidroz testified that he subsequently determined that Mr. Brooks had connections with both Oracle Gas, LLC ("Oracle") and Delphi Oil, Inc. ("Delphi").[3] Ultimately, the plaintiff brought a suit on open account against Mr. Brooks, Oracle, and Delphi. Burke's was not included as a defendant. The plaintiff also filed an amended and supplemental petition to add an additional cause of action under the Louisiana Unfair Trade Practices Act.[4]

Following a hearing at which Mr. Guidroz and Mr. Brooks testified, the trial court ruled in favor of the plaintiff, finding Mr. Brooks, Oracle, and Delphi liable jointly, severally, and *in solido* for the full sum of the invoice ($51,000.00) as well

---

[3] The plaintiff provided an August 2014 business listing from the Louisiana Secretary of State's website, which lists Robert Brooks as the registered agent and Robert E. Brooks as an officer of Oracle. Additionally, the plaintiff submitted an August 2014 business listing from the Louisiana Secretary of State's website, which lists Robert Brooks as the registered agent for Delphi.

At trial, Mr. Brooks testified that he is the sole managing member of Oracle and that Oracle was engaged by Burke's to be the contract operator for the oil well. He explained that Delphi is wholly owned by Gulf Coast Royalty of which he has an approximately 97% ownership interest.

Based on the record and Mr. Guidroz's testimony, the plaintiff appears not to have known about the abovementioned connections until sometime after the stop payment order was issued on the check.

[4] The Louisiana Unfair Trade Practices Act is described, in part, in La.R.S. 51:1405(A), which provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Additionally, La.R.S. 51:1409(A) explains, in pertinent part, that: "Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405, may bring an action . . . to recover actual damages." *See also Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 13-1582 (La. 5/7/14), 144 So.3d 1011.

4

as legal interest from the date of the original demand. In oral reasons for judgment, the trial court explained:

> "[I]n looking at the totality of the circumstances, [defendant] or his wife are either members, agents, or officers of all three [sic] corporations, and given the irregular behavior and seemingly some fraudulent conduct or actions of defendant, the Court will pierce the corporate veil and find the defendants, Robert Brooks and Oracle Gas, liable *in solido* for the full sum of fifty-one thousand dollars ($51,000.00).

The trial court continued: "Delphi as well . . . *In solido*, all three of them."

Thereafter, the defendants requested reasons for judgment. In response, the court provided the following minute entry:

> The Plaintiff has carried its burden of proving its' [sic] case by a preponderance of the evidence. It clear [sic] from the evidence that Plaintiff, Southern Coil[,] rendered certain oil [sic] tubing services as requested by Defendants, Oracle and Delphi. It is clear that Defendant, Brooks[,] was an agent for [Burke's] Energy, Delphi, and Oracle and acting with authority from those corporations, acted in a manner which assured Southern Coil that it would receive payment for services rendered.
>
> The evidence shows that Mr. Brooks testified on the stand that he was acting as agent for defendants. Evidence showed that at no time did Mr. Brooks mention to Southern Coil that he was representing other companies. Southern Coil was not aware that Brooks was acting in the capacity of agent for defendant corporations. Testimony revealed that the Plaintiff, Southern Coil[,] believed that Brooks was acting on his own behalf or as an individual.
>
> Further evidence shows that Brooks was the person who wrote the $51,000.00 check to Southern Coil on August 16 [sic], 2014; then he subsequently issued a stop payment on the same.

Mr. Brooks and Delphi appeal, asserting that the trial court erred concerning the following issues:

1. The finding that Robert E. Brooks was personally liable, piercing the corporate veil of an unknown entity not identified by the District Court [].

2. The finding that Oracle Gas, LLC was liable for the alleged debt [].

5

3. The finding that Delphi Oil, Inc. was liable *in solido* [].

4. The District Court failed to rule on defendant's, Mr. Brooks, Exceptions of No Right and No Cause of Action [].

(Record page citations omitted.)

**Discussion**

*Standard of Review*

The trial court's liability determinations in this case entailed the resolution of factual questions. An appellate court reviews the trial court's factual findings under the manifest error standard of review. *Provosty v. Arc Constr., LLC,* 15-1219 (La.App. 4 Cir. 11/2/16), 204 So.3d 623, *writ denied*, 17-0028 (La. 2/10/17), 216 So.3d 49. The supreme court has provided a two-part test for the reversal of a trial court's factual determinations under the manifest error standard of review. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). First, the appellate court must determine that there is no reasonable factual basis for the trial court's finding in the record. *Id.* Further, the record must reflect that the finding is clearly wrong. *Id.* With the abovementioned legal standard in mind, we turn to consideration of the trial court's findings in light of the defendant's assignments of error.

*Liability of Robert Brooks*

In written reasons for judgment, the trial court concluded:

Evidence showed that at no time did Mr. Brooks mention to Southern Coil that he was representing other companies. Southern Coil was not aware that Brooks was acting in the capacity of agent for defendant corporations. Testimony revealed that the Plaintiff, Southern Coil[,] believed that Brooks was acting on his own behalf or as an individual.

However, review of the record in its entirety reveals no reasonable factual basis for this finding. *See Stobart*, 617 So.2d 880. Specifically, the defense asked Mr.

6

Guidroz whether his "testimony was that Mr. Brooks told [him] that he was representing Burke's Energy, LLC[,]" and Mr. Guidroz answered, "That's correct." This was confirmed when the defense asked whether "during all of this time . . . dealing with Mr. Brooks . . . [Mr. Brooks] told [Mr. Guidroz] that he was a representative of Burke's Energy, LLC[,]" and Mr. Guidroz answered, "[H]e was a consultant, representative, yes." On this point, Mr. Brooks testified that he explained to Mr. Guidroz that he was a consultant for Burke's and that he "absolutely" did not tell Mr. Guidroz that he was working in an individual capacity.

Further, the defense asked Mr. Guidroz whether he "knew Burke's Energy, LLC was the operator of the well[,]" and Mr. Guidroz responded, "Yes." The defense subsequently asked Mr. Guidroz for whom the work was performed, and Mr. Guidroz answered, "Burke's." Additionally, the record reveals that the "Bill To" box reads "Burkes EnergyField [sic]" on the invoice provided by the plaintiff after completion of the job. The record also contains copies of a "SERVICE ORDER AND FIELD RECEIPT" in which the customer box is filled in with "Burkes Energy." Given this evidence, our review indicates that the trial court was manifestly erroneous in its determination that the plaintiff believed Mr. Brooks was acting as an individual. *See Stobart*, 617 So.2d 880.

We next turn to consideration of whether Mr. Brooks is personally liable despite the plaintiff's testimony that Mr. Brooks presented himself as a representative of Burke's to the plaintiff. However, as mentioned above, the plaintiff did not name Burke's as a defendant here. In turn, the record is silent on the scope and nature of Mr. Brooks' seeming representation of Burke's.

The record reveals that Burke's is a limited liability company. Concerning the liability of agents of limited liability companies, La.R.S. 12:1320(B) provides, in pertinent part, that: "Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company." However, the statute is not a complete shield from personal liability, as subsection (D) lists exceptions to the general rule:

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person[.]

Given the above evidence as to Mr. Brooks' status as an agent, at least as to Burke's, we turn to consideration of whether the situation at hand presents any of the enumerated exceptions to the general rule of limited liability—fraud, breach of professional duty, or any other negligent or wrongful conduct. *See* La.R.S.12:1320(D).

First, we consider whether the plaintiff demonstrated that Mr. Brooks committed fraud. In oral reasons for judgment, the trial court referenced "seemingly some fraudulent conduct or actions of defendant[,]" and the plaintiff urges the issue of fraud on appeal. Specifically, the plaintiff asserts that "[t]he fraud here was Robert Brooks, acting for himself, presenting himself and persuading Carl Guidroz to accept the agreement to perform services and to be paid by Mr. Brooks, who has never paid." Above we have found that the evidence undermines a finding that the plaintiff felt that Mr. Brooks was acting on his own behalf. Nonetheless, we consider the alleged presence of fraud as to Mr. Brooks'

8

purported agency of Burke's, which is the only entity of which the plaintiff was informed.

Louisiana Civil Code Article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." The supreme court has said that "[t]here are two elements necessary to prove legal fraud: an intent to defraud and a resulting damage." *Lomont v. Bennett*, 14-2483, p. 12 (La. 6/30/15), 172 So.3d 620, 629, *cert. denied*, _ U.S. _, 136 S.Ct. 1167 (2016). Concerning the intent element, the fourth circuit has said that fraud "may be predicated on promises made with the intention not to perform at the time the promise is made." *Sun Drilling Prods. Corp. v. Rayborn*, 00-1884, p. 15 (La.App. 4 Cir. 10/3/01), 798 So.2d 1141, 1152, *writ denied*, 01-2939 (La. 1/25/02), 807 So.2d 840.

As mentioned above, Mr. Guidroz testified that Mr. Brooks revealed that the oil well was for Burke's and that he was informed that Mr. Brooks was a consultant or representative of Burke's. Additionally, the receipts and the invoice submitted by the plaintiff were addressed only to Burke's. When questioned about the payment process and whether he knew of any other parties that might be financially responsible, Mr. Guidroz answered, "they only would be Burke's Energy[.]" Considering the codal definition of fraud and the paucity of evidence regarding the relationship between Mr. Brooks and Burke's, we find no indication that the plaintiff demonstrated that Mr. Brooks misrepresented or suppressed the truth that the services were to be performed for Burke's and that Burke's, not Mr. Brooks, would be the party responsible for payment as Mr. Brooks was representing himself to be an agent of Burke's.

Moreover, the plaintiff has not proven the two elements of fraud. *See Lomont*, 172 So.3d 620. Significantly, the record reveals that the plaintiff has not proven that Mr. Brooks had the intent to defraud. *Id.* The plaintiff has not provided sufficient evidence that Mr. Brooks' promise of payment was "made with the intention not to perform at the time the promise [was] made." *Sun Drilling Prods. Corp.*, 798 So.2d at 1152. To the contrary, Mr. Brooks left a pre-signed check at the job site for payment of the plaintiff's services. He further explained that the reason he stopped payment on the check was because the invoice total was greater than the amount he anticipated. Finding insufficient record evidence of intent, we find that the plaintiff did not establish the applicability of the fraud exception under La.R.S. 12:1320(D).

Next, we turn to the "breach of professional duty" exception. *See* La.R.S. 12:1320(D). Having reviewed the record in its entirety, we conclude that the plaintiff has introduced neither proof that Mr. Brooks was a member of a legislatively-recognized profession nor evidence, such as licensing, which might elevate Mr. Brooks to the status of a "professional" as contemplated by La.R.S. 12:1320(D). *See Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So.3d 888. Therefore, the "breach of professional duty" exception is inapplicable in this matter. *Id.*

Last, we consider whether the situation falls under the "other negligent or wrongful act" exception of La.R.S. 12:1320(D). The supreme court has said that this exception contains two distinct concepts, as it encompasses acts that are either "negligent" or "wrongful" and that this exception includes, but is not limited to, tort liability. *Ogea*, 130 So.3d 888. Drawing from statutes and jurisprudence, the

supreme court has developed a four-factor test to determine whether the negligent or wrongful act exception applies:

> 1) [W]hether a member's conduct could be fairly characterized as a traditionally recognized tort; 2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; 3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the LLC; and 4) whether the conduct at issue was done outside the member's capacity as a member.

*Id.* at 900-01. We review each of these factors in turn.

The first factor requires us to examine whether Mr. Brooks' conduct can be considered a traditional tort. This factor refers to a tort duty, not a contractual one, and asks whether the individual can be held personally liable for actions undertaken pursuant to the LLC's contract. *Ogea*, 130 So.3d 888. The supreme court has reasoned that the individual's tort duty must be something more than that duty inherent in the LLC's contract, because to hold otherwise would negate the general rule of limited liability for agents of an LLC. *Id.* Turning to the record, we find that the plaintiff did not establish that Mr. Brooks personally owed a statutory, jurisprudential, or fault-based tort duty to the plaintiff. *See id.*

The second factor requires us to determine whether Mr. Brooks' conduct violates a criminal statute intended to protect the plaintiff from the type of harm which ensued. *See Ogea*, 130 So.3d 888. The record does not contain evidence of such conduct.

Next, we must determine whether the conduct was in furtherance of a contract between the plaintiff and Burke's. Discussing the third factor, the supreme court has explained that "if the reason a member is engaged in the conduct at issue is to satisfy a contractual obligation of the LLC, then the member should be more likely to qualify for the protections of the general rule of limited

11

liability in La.R.S. 12:1320(B)." *Ogea*, 130 So.3d at 904. Here, the only evidence presented indicates that Mr. Brooks' interactions with the plaintiff company were represented to be on behalf of Burke's and seemingly in furtherance of the relationship between Burke's and the plaintiff. Therefore, this factor suggests that Mr. Brooks qualifies for the protection of limited liability in La.R.S. 12:1320(B). *See Ogea*, 130 So3d 888.

Last, the fourth factor questions whether the individual acted outside of his representative status. The supreme court has explained that this factor is met if the individual acts "outside" of his capacity as an agent of the LLC or if the individual does not act "inside" the structure of the LLC when contracting. *Ogea*, 130 So.3d 888. Again, the record lacks evidence regarding the structure of Burke's and the scope of any agency relationship between Burke's and Mr. Brooks. The record indicates only that Mr. Brooks said that he is the single managing member of Oracle, which was hired by Burke's as a contract operator for this oil well. At trial, Mr. Guidroz testified that he was notified that the well was owned by Burke's and that Mr. Brooks was a consultant or representative of Burke's. Thus, there is no issue of an undisclosed mandatary[5] relationship for which Mr. Brooks could be held personally liable. *See Ogea*, 130 So.3d 888. The plaintiff has neither demonstrated that Mr. Brooks acted "outside" of his purported agency capacity nor that Mr. Brooks failed to act "inside" the structure of Burke's. *Id.*

Having determined that there is insufficient evidence to demonstrate fraud, breach of professional duty, or any other negligent or wrongful conduct, we

---

[5] Louisiana Civil Code Article 3017 provides that an undisclosed mandatary is "[a] mandatary who contracts in his own name without disclosing his status as a mandatary" and thus "binds himself personally for the performance of the contract."

12

conclude that the plaintiff failed to carry its burden at trial to rebut the presumption that Mr. Brooks is protected by a limitation of liability and is not personally liable.

*Liability of Oracle Gas, LLC and Delphi Oil, Inc.*

The next assignments of error question the trial court's holdings regarding the liability of Oracle and Delphi. However, we note that the petition for appeal was brought by Mr. Brooks and Delphi, not Oracle, and the corresponding order for appeal was granted only to Mr. Brooks and Delphi. Accordingly, the assignment of error regarding Oracle's liability is not properly before the court, as that party has not appealed.

Turning to Delphi, the trial court concluded that "[t]he evidence shows that Mr. Brooks testified on the stand that he was acting as agent for defendants" and "that [the] Plaintiff . . . rendered certain oil [sic] tubing services as requested by . . . Delphi." We note that Delphi's involvement in this matter is not clearly explained in the record;[6] thus, there is no reasonable factual basis for this finding, and the finding is clearly wrong. *See Stobart*, 617 So.2d 888. Having reviewed the record in its entirety, we conclude that Mr. Brooks did not testify that he was acting as an agent for Delphi. Moreover, nothing in the record indicates that Delphi requested the plaintiff's coil tubing services.

Instead, the only evidence in the record on this point indicates that Mr. Brooks represented himself as a consultant of Burke's only and that Burke's was the entity requesting the plaintiff's coil tubing services. Mr. Guidroz testified that,

---

[6] The record reveals that "Delphi Drilling, LLC" and "Delphi Oil, Inc." are two different entities, but only "Delphi Oil, Inc." was named as a defendant in this suit. When asked "[w]hat contact or information did [he] have with regard to Delphi *Oil* to sue them in this case[,]" Mr. Guidroz testified that "[t]he truck that showed up on lot to pick up the equipment was a [Delphi] [*D*]*rilling* truck." (Emphasis added.) Mr. Guidroz further answered that he determined that Mr. Brooks is "an agent for Delphi Oil in the State of Louisiana."

13

in their first telephone conversation, Mr. Brooks told him "[t]hat the well was for Burke's Energy." Additionally, Mr. Guidroz testified that Mr. Brooks never referred him to anyone else, such as Delphi, for payment or credit information. Concerning Delphi's role leading up to this dispute, Mr. Guidroz testified that he and the plaintiff company had "[n]o contacts" and "[n]o business relations" with Delphi. Rather, Mr. Guidroz testified that he *subsequently* determined that Mr. Brooks had a connection with Delphi[7] after the stop payment order was issued on the check. Therefore, we find no basis for the trial court's inclusion of Delphi in the finding of liability.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed, in part, insofar as it finds the defendants/appellants, Robert Brooks and Delphi Oil, Inc., liable. We leave the judgment of the trial court with respect to Oracle Gas, LLC undisturbed insofar as that party has not appealed. Costs of this proceeding are assessed to the plaintiff/appellee, Southern Coil Tubing, Inc.

**REVERSED IN PART.**

---

[7] The plaintiff submitted a 2014 business listing from the Louisiana Secretary of State's website, which lists Robert Brooks as the registered agent for Delphi Oil, Inc.