KANAKA KORRAPATI

VERSUS

AUGUSTINO BROTHERS CONSTRUCTION,
LLC AND CHRISTOPHER PERDOMO

NO. 19-CA-426

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 779-988, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

July 31, 2020

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Stephen J. Windhorst

**<u>AFFIRMED</u>**
**SJW**
**FHW**
**JGG**

COUNSEL FOR PLAINTIFF/APPELLEE,
KANAKA KORRAPATI
    Eric J. Derbes
    Bryan J. O'Neill

COUNSEL FOR DEFENDANT/APPELLANT,
AUGUSTINO BROTHERS CONSTRUCTION, LLC AND CHRISTOPHER
PERDOMO
    Bradford H. Walker
    Gerald Wasserman

**WINDHORST, J.**

Defendants/appellants, Augustino Brothers Construction, LLC (also referred to as "Augustino") and Christopher Perdomo ("Mr. Perdomo"), appeal the trial court's judgment in favor of plaintiff/appellee, Kanaka Korrapati ("Ms. Korrapati"), for damages in the amount of $108,190.43 resulting from unlicensed and improper work pursuant to a construction contract, as well as misrepresentations Mr. Perdomo made on behalf of Augustino to Ms. Korrapati. For the reasons stated herein, we affirm the trial court's judgment and award of damages.

**Facts and Procedural History**

In April 2017, Ms. Korrapati hired Augustino to enclose the back porch of her home for her daughter's pending wedding. In negotiating the agreement, Ms. Korrapati communicated with Mr. Perdomo, Augustino's sole member. A document entitled "Insurance Scope & Contract Specifications" outlines the work to be completed by Augustino Brothers Construction, LLC and provides that the construction permit is included. In a proposal letter dated April 27, 2017, signed by both parties, Augustino agreed to complete the project within three (3) months for a cost of $105,000.00.

After entering into the construction contract and after Augustino had commenced work, Ms. Korrapati learned that Augustino Brothers Construction, LLC was not a licensed contractor when it entered into the contract. In addition, after Augustino began work on the project, there were delays and problems with the quality of work.

On January 5, 2018, Ms. Korrapati cancelled the construction contract. Before cancelling, she paid Augustino a total of $79,050.00 under the contract. On January 9, 2018, Jefferson Parish posted a notice of violation at the worksite because there was no permit for the project. Thereafter, Ms. Korrapati contacted Marc

Banner to help rectify the violation notice she received from Jefferson Parish and to finish the project.

On January 25, 2018, Ms. Korrapati filed suit in the Twenty-Fourth Judicial District Court of Jefferson Parish against Augustino Brothers Construction, LLC and Mr. Perdomo, seeking to recover the amount paid to Augustino, the costs of removing Augustino's improperly constructed work, and other damages to be proven at trial. In the petition, Ms. Korrapati alleged that (1) Augustino failed to obtain a construction permit, as required by the construction contract; (2) the construction contract was void because Augustino failed to meet contractor licensing requirements; and (3) because Mr. Perdomo misrepresented that he acquired a permit, he was personally liable for her damages. She also alleged that Augustino's work on the project failed to comply with the plans and specifications, the construction contract or the applicable code, was performed with inferior quality materials, and was incomplete and unsatisfactory. As a result, Ms. Korrapati asserted that Augustino's work had to be removed and replaced, and that Augustino was not entitled to any compensation for the work.

On May 16, 2018, Ms. Korrapati filed a motion for partial summary judgment, seeking declarations that (1) the construction contract between her and Augustino Brothers Construction, LLC was void given that it lacked a valid contractor's license; (2) all of Augustino's work on the property was illegal; (3) Augustino was not entitled to payment for any materials, service or labor; and (4) she was entitled to return of the contract price ($79,050.00) and costs incurred for evaluation and removal of the improperly constructed addition ($19,917.93). By judgment dated August 22, 2018, the trial court granted Ms. Korrapati's motion for partial summary judgment to the extent that it declared the construction contract null. The trial court denied the motion in other respects finding that there were genuine issues of material fact regarding the remaining issues. The case proceeded to trial on April 15, 2019.

At trial, Mr. Perdomo testified, as Augustino's sole member, that in 2017, Augustino Brothers Construction, LLC was not a licensed contractor, and that the construction contract with Ms. Korrapati resulted in the Louisiana State Contractor's Board fining Augustino for entering into this construction contract without a contractor's license. With regard to Augustino Brothers, Inc., however, Mr. Perdomo testified that he has a commercial license, a residential license, and a home improvement contractor license. During his testimony, he asserted that the drafting of the construction contract between Ms. Korrapati and Augustino Brothers Construction, LLC instead of Augustino Brothers, Inc. was a paperwork error.

At trial, Ms. Korrapati's counsel questioned Mr. Perdomo regarding whether he obtained a permit to perform the work on Ms. Korrapati's house and what he told Ms. Korrapati regarding whether he had obtained a permit. In response to multiple questions, Mr. Perdomo testified that he "was given a number by an individual at the permit office"; "[t]hey told me a conditional number"; "I did not have a full permit"; and "I told her I went and paid for a permit, yes." Ms. Korrapati's counsel also questioned Mr. Perdomo regarding his experience obtaining permits. According to his testimony, Mr. Perdomo has been a contractor since 2005, has obtained permits before, and knows that when you obtain a permit, Jefferson Parish gives you a placard that the contractor posts somewhere on the jobsite. Mr. Perdomo did not receive a placard for Ms. Korrapati's job, and thus could not post one at the jobsite. Thus, he ultimately testified that "We knew we did not have a permit." Mr. Perdomo also admitted that he sent Ms. Korrapati the application for the permit when she asked for a copy of the permit.

Mr. Perdomo further testified that Augustino was unable to obtain the permit for the project because it did not have house plans and specifications, that Ms. Korrapati did not give him the necessary plans and specifications, and that she refused to pay for anything else. Additionally, according to Mr. Perdomo, there were

time delays because Ms. Korrapati made numerous changes to the scope of the work, and Augustino allegedly discovered problems while working on the project, including a serious plumbing issue under the slab, an unknown-layer of tile beneath the concrete pad, and a lack of pile support beneath the foundation. During the course of the construction contract, some of the work Augustino performed on the project included removing the roof structure down to the supports and portions of concrete from the slab; installation of a new slab; removal of some decking; and replacement of the wood.

Mr. Banner, who finished the project for Ms. Korrapati, testified at trial as an expert general contractor. He testified that a permit was required to construct the sunroom Ms. Korrapati wanted, and that to obtain a permit Jefferson Parish required a set of structural drawings. According to Ms. Korrapati, Mr. Banner asked her for the plans and specifications, and she gave them to him.

In evaluating the scope of the project that remained, Mr. Banner inspected Augustino's work. Mr. Banner testified that he found a number of deficiencies in Augustino's work, including problems with the structure's attachment to the main house and the sunroom's slab. Specifically, he stated that, "It look[ed] like a 2-by-6, 2-by-8 ledger board [was] anchored to the brick veneer of the existing home with what are called 'wedge anchors.'" Ms. Korrapati's counsel asked if this was a problem, to which Mr. Banner responded, "Normally, the bricks would have been removed and this would have been attached to a structural member of the home *** the framing. The brick veneer is not a structural member." Mr. Banner explained that the brick veneer is "not meant to support the weight, especially the way that's designed, and it probably would not meet with the specifications for the uplift, the roof." Mr. Banner stated that it would have been proper to cut out the bricks and prepare for new joist supports. He also testified that the sunroom's slab was not properly attached.

Mr. Banner also considered whether the project could be repaired. Jefferson Parish informed him that the structure was constructed without pilings in a pilings zone. When Mr. Banner's company excavated the perimeter of the foundation, it confirmed that there were no pilings and also found that the foundation was inadequate to support the structure. Mr. Banner consulted with James Holcomb from Holcomb Brothers Foundation, who did some exploratory excavation to evaluate options. Mr. Banner and Mr. Holcomb concluded that there was no solution short of removing the structure to cure the problems created by Augustino's work, including the lack of a structural beam along the perimeter of the slab to support the lifting of the slab. According to Mr. Banner, he also found problems with the windows, doors, and framing.

Mr. James Heaslip, an engineer who worked with Mr. Banner on Ms. Korrapati's project, also testified at trial and was accepted as an expert in engineering. He testified that the patio's slab was "overstressed or overloaded by the adding of additional concrete" because Augustino added too much concrete on top of the preexisting slab creating a deficient slab. According to Mr. Heaslip, Augustino's work resulted in two adjacent slabs with different foundations being connected to the main house, which can lead to differential settlement, the foundations moving independently of each other, flooring and plumbing problems, and cracks in the walls. Mr. Heaslip also testified that it was not good building standards to start a job without a permit, to perform a job without inspections by the Jefferson Parish Code of Process, or to add concrete to a structure without consulting an engineer.

Sam Scandaliato, a licensed professional civil engineer and licensed land surveyor, testified at trial as an expert in structural elevation and foundation. Mr. Scandaliato inspected the structure Augustino built on Ms. Korrapati's property that was being torn down at the time. He testified that the structure looked like it was in

"pretty good shape," and that he did not think it should have been torn down. Mr. Scandaliato also testified that it would have been appropriate to do load calculations to determine the sufficiency of the foundation before tearing it down.

Mike Centineo, a retired New Orleans code official, testified at trial as an expert in the fields of building inspection and contracting. Mr. Centineo inspected Ms. Korrapati's project with Mr. Scandaliato on April 5, 2018. He testified that they measured the joists, the studs, and the spacing and spans of the structure Augustino built, which was being removed. Mr. Centineo testified that he concluded the structure was built in accordance with the standard practice of the building code. During his testimony with regard to whether a permit was required, he stated that "I don't really know what was required because, you know, that was handled by someone else." Ms. Korrapati's counsel questioned Mr. Centineo as to whether he was "aware that shortly before your inspection[,] 7 and a quarter inches of concrete was added to the top of a portion of the foundation?" Mr. Centineo responded that he was not told that, but was told that 2 or 3 inches of concrete were added. He also stated that this would make a difference in his conclusions as to whether the foundation could support the structure.

**Assignments of Error**

Appellants assert that the trial court erred in: (1) declaring the contract between Ms. Korrapati and Augustino Brothers Construction, LLC, absolutely null instead of finding there was a clerical error and reforming the construction contract to be a contract between Ms. Korrapati and Augustino Brothers, Inc.; (2) failing to recognize that Ms. Korrapati had the responsibility to pay for and provide the plans and specifications required by Jefferson Parish to obtain a construction permit; (3) finding that Mr. Perdomo on behalf of Augustino intentionally and purposely misled Ms. Korrapati by failing to obtain a building permit from the Jefferson Parish Department of Inspection and Code Enforcement; (4) finding that Ms. Korrapati's

removal of the existing patio cover and enclosure walls was necessary because the renovated structure built by Augustino was structurally correct in accordance with applicable codes and met the standards of good construction and engineering; (5) finding that Mr. Perdomo acted in his individual capacity and was personally liable for acts of fraud and intentional misrepresentation; (6) denying Augustino and Mr. Perdomo recovery for the actual cost of materials, services, and labor under an unjust enrichment theory; and (7) failing to recognize that Augustino's work was satisfactory based on the expert testimony of Mike Centineo, Licensed General Contractor, Certified Building Inspector and Certified Plan Examiner, and Sam Z. Scandaliato, P.E., Land Surveyor.

**Law and Analysis**

**Standard of Review**

The resolution of this construction case involved multiple factual findings and credibility determinations. It is well-settled that an appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State through Dep't of Transp. & Dev., 617 So.2d 880, 882 (La. 1993). Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings. Vinet v. D & M Renovation, LLC, 17-161 (La. App. 5 Cir. 12/20/17), 235 So.3d 1304, 1310. A trial court's determination as to the credibility of witnesses is entitled to great deference. Id.

**The Validity of the Agreement**

Appellants first assert that the trial court erred in declaring the contract between Ms. Korrapati and Augustino Brothers Construction, LLC absolutely null. In this regard, appellants claim that there was a clerical error and that the

construction contract should be reformed to reflect a contract between Ms. Korrapati and Augustino Brothers, Inc., which is a licensed contractor.

La. R.S. 37:2160 provides as follows:

(1) It shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter.

(2) It shall be unlawful for any contractor, licensed or unlicensed, who advertises in any form or in any news medium, to advertise that he is a licensed contractor without specifying the type of license to which he is referring.

La. C.C. art. 2030 states that "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed." Louisiana courts have nullified contracts entered into by unlicensed contractors. Executone Sys. Co. of La. v. Jefferson Par. Hosp. Serv. Dist. No. 2 for Par. of Jefferson, 15-569 (La. App. 5 Cir. 2/24/16), 186 So.3d 1210, 1218, writ denied sub nom, Executone Sys. Co. of La. v. Jefferson Par. Hosp. Serv. Dist. No. 2 ex rel. Par. of Jefferson, 16-0569 (La. 5/13/16), 191 So.3d 1059. At trial, Mr. Perdomo admitted that Augustino Brothers Construction, LLC was not licensed at the time it entered into the contract with Ms. Korrapati. Considering the above law and that Augustino Brothers Construction, LLC was not licensed when it entered into the construction contract with Ms. Korrapati, the record supports the trial court's declaration of the construction contract as null.

Appellants assert that there was a clerical error and that Ms. Korrapati's contract should have been with Augustino Brothers, Inc., which was and is a licensed contractor. However, the only evidence to support that there was a clerical error is Mr. Perdomo's testimony. Both the "Insurance Scope & Contract Specifications" and the April 27, 2017 letter signed by the parties refer to Augustino Brothers Construction, LLC. Ms. Korrapati made out some checks to Augustino Brothers

Construction, LLC, and when deposited, the checks were stamped with Augustino Brothers Construction, LLC.

The trial court, faced with the testimony of Mr. Perdomo, as well as the entirety of the evidence, clearly did not believe that formation of the construction contract with Augustino Brothers Construction, LLC was a paperwork error. Upon review, we cannot find manifest error in the trial court's declaration of the construction contract as null.

### The Obligation to Provide Plans and Specifications

Appellants also assert that the trial court erred in failing to recognize that it was Ms. Korrapati's responsibility to pay for and provide the necessary plans and specifications to obtain a construction permit.

Contrary to appellants' assertions, the construction contract documents state that the construction permit is included and do not include any language requiring that Ms. Korrapati provide Augustino with plans and specifications to obtain the permit or that she is responsible for the costs of obtaining those documents. Ms. Korrapati testified that Augustino did not ask for the plans and specifications, and that she did not know Augustino needed the plans and specifications for the permit without asking. In light of these facts and the deference a trial court's credibility determinations are given, we find no support for this assignment of error.

### Misrepresentation Regarding the Permit and Individual Liability

Appellants allege that the trial court erred in finding that Mr. Perdomo and Augustino intentionally and purposely misled Ms. Korrapati by failing to obtain a building permit and that Mr. Perdomo acted in his individual capacity and was personally liable for acts of fraud and intentional misrepresentation.

"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La.

C.C. art. 1953.  "Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. This exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations." La. C.C. art. 1954; Gauthier v. Harmony Const., LLC, 13-269 (La. App. 5 Cir. 10/9/13), 128 So.3d 314, 324.  "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence." La. C.C. art. 1957.

In alleging that Mr. Perdomo made an intentional misrepresentation, Ms. Korrapati sought to hold him personally liable for her damages.  An LLC, such as Augustino Brothers Construction, LLC, is an entity to which the law attributes personality and is, therefore, a juridical person. *See*, La. C.C. art. 24; La. R.S. 12:1301.  The law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons. *See* La. C.C. art. 24.  As a result, La. R.S. 12:1320(B) states that "Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company."

In narrowly defined circumstances, when individual member(s) of a juridical entity such as an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable.  Ogea v. Merritt, 13-1085 (La. 12/10/13), 130 So.3d 888, 894-95.  A member's protection against personal liability is not unlimited.  Id. at 897.  La. R.S. 12:1320(D) sets forth an exception to the general rule:

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation

of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

La. R.S. 1320(D) has been interpreted to provide a cause of action against a member, manager, or employee of a limited liability company because of any breach of professional duty, as well as for any fraud or other negligent or wrongful act. Ogea, 130 So.3d at 897; W.J. Spano Co. v. Mitchell, 05-2115 (La. App. 1 Cir. 9/15/06), 943 So.2d 1131, 1132-33. Because fraud is not defined in La. R.S. 12:1320, the Civil Code provisions on fraud govern. B & P Rest. Grp., LLC v. Delta Admin. Servs., LLC, 18-442 (La. App. 5 Cir. 9/4/19), 279 So.3d 492, 500.

In her petition, Ms. Korrapati alleged that Augustino was contractually and legally obligated to obtain a permit, and that when she requested a copy of the permit from Mr. Perdomo, he forwarded her an application for a permit, asserting that it was the permit. In its written reasons for judgment, the trial court found as follows:

> That Mr. Perdomo on behalf of Augustino Brothers intentionally and purposefully misled Plaintiff, Ms. Korrapati, to believe that the job was properly permitted when he knew that it was not. * * * The Court finds that this was an intentional misrepresentation of a material fact made with intent to deceive and perpetrated upon Plaintiff, Ms. Korrapati, by Mr. Perdomo individually for his personal gain. This constitutes fraud under Louisiana law. The Court further finds that Plaintiff, Ms. Korrapati, reasonably and justifiably relied upon the representation of Mr. Perdomo and that Plaintiff, Ms. Korrapati, sustained a loss as a result thereof.

Under the construction agreement, appellants agreed to obtain a construction permit for the project. Despite knowing that Augustino did not have a permit for the job, Mr. Perdomo informed Ms. Korrapati that he had obtained a permit. Trial testimony indicates that Mr. Perdomo knew that he did not have a permit because if he had obtained a permit, he would have received a placard (evidencing the permit) to post at the jobsite. During questioning at trial, Mr. Perdomo ultimately testified that "We knew we did not have a permit." The testimony also indicates that Mr. Perdomo told Ms. Korrapati he had received a conditional permit, even though conditional permits are not issued. Further, when Ms. Korrapati requested a copy of

the permit, Mr. Perdomo sent her the application representing it as the permit. Despite knowing he lacked a permit, Mr. Perdomo made Ms. Korrapati believe he had a permit and commenced work on the project.

After considering all the testimony and evidence, the trial court clearly believed that Mr. Perdomo made an intentional misrepresentation of a material fact with the intent to deceive. Based on the record before us, we cannot find manifest error in the trial court's conclusion that Mr. Perdomo's acts constitute fraud and intentional misrepresentation and were made with the intent to deceive. The record also shows that Ms. Korrapati reasonably relied on his representations in allowing them to commence work without a permit, which resulted in the Parish finding her in violation of the law. Moreover, as a result of Ms. Korrapati's reasonable and justifiable reliance on Mr. Perdomo's representation, she suffered damages. Thus, we find no error in the trial court's judgment holding Mr. Perdomo jointly, severally, and solidarily liable with Augustino Brothers Construction, LLC for any and all damages.

### The Removal of Augustino's Work

Appellants assert the trial court erred in finding that Ms. Korrapati's removal of Augustino's work was necessary because the renovated structure built by Augustino was structurally correct in accordance with applicable codes and met the standards of good construction and engineering as supported by the expert testimony of Mr. Centineo and Mr. Scandaliato.

With regard to expert testimony, the Louisiana Supreme Court has stated that:

> the rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lasyone v. Kansas City Southern R.R., 00-2628, p. 13 (La. 4/3/01), 786 So.2d 682, 693; Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La. 1990). Credibility determinations, including the evaluation of and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be disturbed on appeal in the absence of manifest error.

Hanks v. Entergy Corp., 06-477 (La. 12/18/06), 944 So.2d 564, 580-81.

Here, it is clear that the trial court chose to base its decision on the expert testimony of Mr. Banner and Mr. Heaslip. The testimony of these experts supports that Ms. Korrapati relied on their recommendations in making the decision to demolish Augustino's work. Mr. Banner testified that (1) he discovered a number of deficiencies in how the structure was attached to the structure of the home; (2) the foundation was a major issue because it was constructed with no pilings in a piling zone, resulting in a foundation that was inadequate to support the foundation; and (3) he attempted to find a less expensive method than demolition to remedy the problems, but was unable.

In light of the deference to which the trial court's credibility determinations are entitled, this Court cannot disturb the trial court's reasonable evaluations of credibility. Here, we find the trial court's decision to accept the testimony of Ms. Korrapati's experts reasonable, and thus cannot say that the trial court erred in disregarding the testimony of Augustino's experts. Considering this, we further find no manifest error in the trial court's conclusion that the removal of Augustino's work was necessary.

**Augustino's Unjust Enrichment Claim**

Lastly, Appellants assert that the trial court erred in denying it recovery of the actual cost of materials, services, and labor under an unjust enrichment theory for the work performed on Ms. Korrapati's house.

Even though work on a building is shown to be incomplete or defective, the contractor may recover the contract price less the cost of correction or completion when he has substantially performed the contract. If he has not, he is limited to *quantum meruit*. Daspit Bros. Marine Divers v. Lionel J. Favret Const. Co., 436 So.2d 1223, 1230 (La. Ct. App. 1983). If a building contract has not been substantially performed, the contractor's recovery is limited in *quantum meruit*. Martin v. AAA Brick Co., 386 So.2d 987, 991 (La. Ct. App. 1980). If the

construction has to be removed and replaced due to the defects, under the jurisprudence, the owner may require the contractor to remove the object from his land and restore the premises to their prior condition. In addition, the owner is entitled to damages. Id. In Martin, the court found that a contractor could not recover for its construction of a fireplace because the fireplace was so poorly built that it had to be demolished and the homeowners had received no benefit. Id.

The trial court denied Augustino any recovery for its work based on the conclusion that Ms. Korrapati's decision to demolish Augustino's work was supported by expert opinions that the slab and foundation would not support the new construction. As discussed above, from our review of the record, we conclude that these determinations are reasonable and not clearly erroneous. Here, both the engineer and contractor hired after Ms. Korrapati fired Augustino, testified that Augustino's work was deficient and had to be removed. Mr. Heaslip, the engineer, testified that the concrete Augustino added to one of the slabs caused the slab to be overstressed or overloaded. According to his testimony, this would lead to cracking. Mr. Banner testified that "there were a number of deficiencies in regards to how the structure [a sunroom] was attached to the structure of the home." He also testified that the foundation constructed by Augustino was inadequate to support the structure. Mr. Banner stated that he determined it was necessary to demolish Augustino's work to complete the project after considering less expensive means (other than demolition) to remedy the problems created by Augustino's work.

Considering the foregoing testimony, other evidence, and jurisprudence, we find no error in the trial court's conclusion that Augustino is not entitled to recover *quantum meruit* for the work it performed.

**Decree**

For the reasons stated above, we affirm the trial court's judgment.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **JULY 31, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**19-CA-426**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
ERIC J. DERBES (APPELLEE)          LEONARD M. BERINS (APPELLANT)

### MAILED
BRYAN J. O'NEILL (APPELLEE)        BRADFORD H. WALKER (APPELLANT)
ATTORNEY AT LAW                     GERALD WASSERMAN (APPELLANT)
3027 RIDGELAKE DRIVE                ATTORNEYS AT LAW
METAIRIE, LA 70002                  3939 NORTH CAUSEWAY BOULEVARD
                                    SUITE 200
                                    METAIRIE, LA 70002